**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Victor Raul SANCHEZ–VALDERUTEN,**
**Defendant–Appellant.**

**No. 93–4022.**

United States Court of Appeals,
Tenth Circuit.

Dec. 9, 1993.

Loni F. DeLand of McRae & DeLand, Salt Lake City, UT, for defendant-appellant.

Richard D. McKelvie, Asst. U.S. Atty. (Richard D. Parry, U.S. Atty., David J. Schwendiman, Asst. U.S. Atty., Kevin L. Sundwall, Sp. Asst. U.S. Atty., on the brief), Salt Lake City, UT, for plaintiff-appellee.

Before LOGAN, SEYMOUR and MOORE, Circuit Judges.

LOGAN, Circuit Judge.

Defendant Victor Raul Sanchez–Valderuten appeals from the district court's judgment after his conditional guilty plea to possession with intent to distribute cocaine in violation of 21 U.S.C. § 841(a)(1) and 841(b)(1)(A). Defendant argues that the district court erred in denying his motion to suppress cocaine found in a search of his vehicle after he was stopped for speeding. He asserts the initial stop was pretextual, the detention following the stop was unreasonable, and his consent to the search was not free and voluntary. Defendant also contends he received ineffective assistance of counsel at his suppression hearing.

I

On November 6, 1991, defendant was traveling east on I–70 through Sevier County, Utah, in an El Camino automobile. Sevier County Deputy Phil Barney was running radar and observed the vehicle traveling seventy-one m.p.h. in a sixty-five m.p.h. zone. Barney turned on his lights and stopped the vehicle for speeding. Barney's car was equipped with a fixed video camera that automatically recorded the stop.[1] The video-tape, which we have viewed, was introduced as evidence at the suppression hearing and is part of the record on appeal.

After stopping the vehicle, Officer Barney testified that he approached the driver's side and "[a]s [he] walked up and was there at the driver's door, [he] immediately smelled very heavy smell of air freshener-type smell and then coffee." App. D at 16. Barney stated that this smell is used by persons smuggling marijuana or cocaine to "kill the smell of the drugs." *Id.* Thus, "[a]s soon as [Barney] smelled the coffee and the really heavy air freshener, [he] suspected there were drugs in the vehicle." *Id.* at 21.

Barney asked defendant for his driver's license and vehicle registration. Defendant produced a valid New York state driver's license and a Washington state registration in the name of Victorino Sanchez, with another name handwritten in pencil on the form. Barney then asked defendant about his travel plans. Defendant "said he was going to New York and he kept saying that he was moving his family to the State of Washington. Also [he talked] about being a musician, he seemed to evade the answer of actually where he was coming from." *Id.* at 18–20. Barney testified that it would be unusual for someone traveling from New York to Washington state to travel I–70, because it is a more southerly route.

During this conversation Barney spoke to defendant in English, although it was apparent that defendant did not speak fluent English. Barney testified that "we could understand each other," although he had "no way of knowing whether [defendant] fully understood" him. *Id.* at 36. Barney repeated some questions and occasionally used hand gestures to communicate.

Following the conversation about defendant's travel plans, Barney retained defendant's driver's license and registration and asked defendant whether he had any guns. Defendant replied no, and Barney then asked defendant whether he had any "marijuana" or "cocaine." Addendum to Appendix at

---

**1.** Officer Barney wore the microphone for the audio portion of the recording in his shirt and carried a voice transmitter on his belt. The quality of the audio varied; some of the conversation was not discernible.

12:53. When defendant said "no," Barney asked if he could look in the vehicle, and gestured toward the inside of the vehicle. Defendant replied "okay." App.D at 21; Addendum to Appendix at 12:54.

Deputy Barney began to check out the compartment behind the seat, because he noticed it appeared to be much larger than in a standard El Camino. He felt what he thought to be a door. Barney then asked defendant about the smell of coffee grounds; although this was about eight or nine minutes after he testified he first smelled coffee, he asked defendant about it at this point "[j]ust to see his reaction." App.D. at 27. Although Barney stated that defendant did not respond to the question, the videotape indicates defendant said "I drink." Addendum to Appendix at 12:59. Defendant removed a bag from behind the spare tire, and opened it on his own initiative.

Barney then radioed and telephoned the Sheriff's Office and various officials in an attempt to obtain a telephonic search warrant. He also continued to examine the vehicle. About twenty minutes after the stop began, Barney asked defendant "how much cocaine?" Addendum to Appendix at 1:09. Defendant replied "no." *Id.* Barney then patted defendant down, and asked him in English and in Spanish if he had any money—"dinero?" *Id.* Defendant did not respond, and Barney took money from defendant's pocket and from his wallet. Defendant said "I play music," apparently explaining why he had the money. *Id.* Barney asked defendant "where were you raised—what country?" and defendant responded "Colombia." *Id.* at 1:10. Barney then placed defendant in handcuffs.

Barney left defendant in the custody of another officer, who had stopped to assist, and drove to Richfield to obtain a warrant to search the vehicle. Upon his return with the warrant, about twenty minutes later, Barney and other officers found the control button and opened the door to the compartment. The compartment contained packages, wrapped in brown tape and cellophane, and a substantial amount of coffee grounds. A field test of one package was positive for cocaine. Thirty-eight packages of cocaine were found in the compartment.

## II

We review a district court's denial of a motion to suppress evidence under a clearly erroneous standard, viewing the evidence in the light most favorable to the district court's ruling. *United States v. Soto,* 988 F.2d 1548, 1551 (10th Cir.1993). The ultimate determination of reasonableness, however, is a question of law that we review de novo. *Id.*

### A

Defendant argues for the first time on appeal that the initial stop was pretextual.[2] Therefore, we review the district court's finding that the initial stop was lawful for plain error. Fed.R.Crim.P. 52(b) ("Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court."); *see United States v. Young,* 470 U.S. 1, 15, 105 S.Ct. 1038, 1046, 84 L.Ed.2d 1 (1985) (plain error standard allows reversal to correct only "particularly egregious" errors or errors "that seriously affect the fairness ... of judicial proceedings"); *see also United States v. de Francisco–Lopez,* 939 F.2d 1405, 1408 n. 1 (10th Cir.1991) (applying plain error standard).

"A pretextual stop occurs when the police use a legal justification to make the stop in order to search a person or place, or to interrogate a person, for an unrelated serious crime for which they do not have the reasonable suspicion necessary to support a stop." *United States v. Guzman,* 864 F.2d 1512, 1515 (10th Cir.1988). In this circuit the test for determining whether the stop was unconstitutional is " 'whether under the same circumstances a reasonable officer *would* have made the stop in the absence of the invalid

---

**2.** The magistrate's report and recommendation stated that "[d]efendant makes no challenge to his stop, which was based on a speeding violation. The stop was lawful." *See* App. E at 10.

(citations omitted). No objection was taken to the report and recommendation and it was adopted by the district court.

purpose.'" *Id.* at 1517 (quoting *United States v. Smith*, 799 F.2d 704, 709 (11th Cir.1986)).

■ Defendant did not raise the legality of the stop at the suppression hearing; therefore the district court did not apply the objective standard for pretextual stops and there is no record from which we can independently apply the test. Deputy Barney testified that his attention was drawn to defendant's vehicle because he clocked it going seventy-one m.p.h. in a sixty-five m.p.h. zone; and that he decided to stop the vehicle for speeding. Defendant points out that Barney did not write a ticket for speeding and argues this demonstrates the stop was pretextual. Barney testified, however, that immediately upon reaching the vehicle he smelled an odor suggesting the vehicle contained contraband drugs. Barney's failure to issue a speeding ticket when he immediately suspected that defendant was transporting drugs is logical and does not compel a finding that the stop was pretextual. The district court found the stop was based on speeding,[3] and on the record before us we hold that the district court's finding that the stop was lawful is not clearly erroneous.

### B

■ Defendant argues that even if the initial stop was not pretextual, the detention that followed the stop was unreasonable. "During a routine traffic stop, the detaining officer may request a driver's license and vehicle registration, run a computer check on the car and driver, and issue a citation." *United States v. Soto*, 988 F.2d 1548, 1554 (10th Cir.1993) (citations omitted). "'If the driver produces a valid license and proof of right to operate the vehicle, the officer must allow him to continue on his way without delay for further questioning.'" *Id.* (quoting *United States v. Pena*, 920 F.2d 1509, 1514 (10th Cir.1990), *cert. denied,* —— U.S.

——, 111 S.Ct. 2802, 115 L.Ed.2d 975 (1991)). If the officer detains the driver for further questions unrelated to the stop he must have an "objectively reasonable articulable suspicion" of illegal activity. *Soto,* 988 F.2d at 1554. The assessment of reasonable suspicion is based on the "'totality of the circumstances.'" *United States v. Sokolow,* 490 U.S. 1, 8, 109 S.Ct. 1581, 1585, 104 L.Ed.2d 1 (1989) (quoting *United States v. Cortez,* 449 U.S. 411, 417, 101 S.Ct. 690, 695, 66 L.Ed.2d 621 (1981)); *Soto,* 988 F.2d at 1555.

The magistrate judge found that Deputy Barney smelled coffee and air freshener at the time he requested defendant's license and registration. Barney, an experienced law enforcement officer trained in drug interdiction, testified that this combination is "known to be used by drug transporters to cover the smell of a controlled substance." App.E at 11–12. Based on the smell, the "unlikely" route, and defendant's evasion of Barney's questions concerning his point of departure, the magistrate found there was reasonable suspicion to believe defendant was transporting drugs.

We have upheld findings of reasonable suspicion in somewhat similar circumstances. *See, e.g., Pena,* 920 F.2d at 1514 (car registered in one state, driver's license from another, and trunk lock of vehicle was punched out); *United States v. Stone,* 866 F.2d 359, 362 (10th Cir.1989) (car smelled of masking odor; driver was suspected of involvement in drug smuggling). Based on the circumstances in the instant case, we uphold the district court's determination that the detention for further questioning was based on reasonable suspicion.

### C

■ Defendant next argues that the district court erred in finding that he voluntarily consented to the search of his vehicle.[4] The

---

3. The district court cited, inter alia, our opinion in *United States v. Deases,* 918 F.2d 118 (10th Cir.1990), *cert. denied,* —— U.S. ——, 111 S.Ct. 2859, 115 L.Ed.2d 1026 (1991), in which we found a stop lawful when the officer testified that he routinely stopped vehicles traveling five to six miles over the speed limit.

4. Defendant argues that the consent followed an illegal search or seizure, and therefore we must decide not only whether the consent was voluntary, but also whether it was "'sufficiently an act of free will to purge the primary taint.'" *Guzman,* 864 F.2d 1512, 1520 (10th Cir.1988) (quoting *Brown v. Illinois,* 422 U.S. 590, 599, 95 S.Ct. 2254, 2259, 45 L.Ed.2d 416 (1975) (quoting

voluntariness of consent is a question of fact based on the totality of the circumstances; therefore we must uphold the district court's findings unless clearly erroneous. *United States v. McKneely*, 6 F.3d 1447, 1452 (10th Cir.1993).

■ The government bears the burden of proving a voluntary consent. *United States v. Price*, 925 F.2d 1268, 1271 (10th Cir.1991). "[T]he government must show that there was no duress or coercion, express or implied, that the consent was unequivocal and specific, and that it was freely and intelligently given." *Soto*, 988 F.2d at 1557 (citing *Price*, 925 F.2d at 1270).

Defendant concedes that Barney did not apply overt coercion. He asserts, however, that when Barney asked to look in the vehicle he was holding defendant's documents and his "body language ... communicated the request as an order to get out of the car and move away." Brief of Appellant at 15. Thus defendant argues that his answer of "okay" and his action of getting out of the vehicle was merely acquiescence to authority. We have reviewed the tape and record carefully and reject this contention.

Although "any individual being subjected to an investigative detention will feel some degree of compulsion to acquiesce to an officer's request," *Soto*, 988 F.2d at 1558, here there is no evidence of overt duress or coercion. The interchange took place in public view on the shoulder of a busy interstate highway; Barney was the only law enforcement officer present; he used a polite if direct manner and tone, and he did not wield any weapons. Defendant asserts that Barney's failure to inform him of his right to withhold his consent increased the coercive nature of the request. Whether a defendant is informed that he need not consent to a

search is only one factor in determining whether consent was voluntary. *See United States v. Ward*, 961 F.2d 1526, 1533 (10th Cir.1992). We do not find this factor controlling.

■ Defendant contends that when a defendant is a "non-English speaking foreigner ... [from] a third world police-state country such as Columbia [sic]," we should give additional weight to the possibility of implied coercion. Brief of Appellant at 14. In *United States v. Recalde*, 761 F.2d 1448, 1454 (10th Cir.1985), we held that a defendant's attitude toward authority "is certainly relevant to the issue of coercion." *See also Schneckloth v. Bustamonte*, 412 U.S. 218, 229, 93 S.Ct. 2041, 2049, 36 L.Ed.2d 854 (1973) ("In examining all the surrounding circumstances to determine if in fact the consent to search was coerced, account must be taken of ... the possibly vulnerable subjective state of the person who consents."); *United States v. Mendoza–Salgado*, 964 F.2d 993, 1011 n. 9 (10th Cir.1992) ("Restated, the test is not whether a reasonable person would have felt coerced, but whether the consenting party felt coerced under the existing circumstances."). *Recalde*, however, does not require that defendant's attitude toward authority be given great weight in the totality analysis. *United States v. Zapata*, 997 F.2d 751, 759 n. 6 (10th Cir.1993).[5] We are satisfied that, under the totality of the circumstances, defendant's consent was not involuntary.

■ Defendant also argues that he did not understand that he was being asked to consent to a search. Officer Barney testified that "we could understand each other," but also stated that he had no way to know whether defendant fully understood him. App.D. at 36. The video tape indicates de-

*Wong Sun v. United States*, 371 U.S. 471, 486, 83 S.Ct. 407, 416, 9 L.Ed.2d 441 (1963))). We have upheld the district court's finding that the detention of defendant was based on reasonable suspicion; therefore we need not apply the three-part analysis of *Brown*, 422 U.S. at 603–04, 95 S.Ct. at 2261–62, to determine whether the taint was purged.

**5.** We note the tension between this statement paraphrased from a footnote in *Zapata*, acknowledging that one panel cannot overrule another

panel decision of the court, and the statement in the text of *Zapata* 's majority opinion that "we reject the notion that [defendant's] attitude toward police, from whatever source, can constitute such a relevant subjective characteristic." *Zapata*, 997 F.2d at 759. The quoted text, of course, provides no comfort to defendant; taken literally, it would hold that defendant's attitude toward police derived from his experiences in his native Mexico would be totally irrelevant.

fendant had difficulty speaking English. For example, most of his responses to Barney's questions were in phrases or single words, and he sometimes simply did not respond to a question. He did appear to have fair *receptive* English language skills, however; for instance, when Barney asked for his registration and license he produced them immediately; he responded to questions concerning his travel plans by mentioning U.S. cities; and when asked in what country he was raised, he responded fairly quickly "Colombia." Defendant provided no direct evidence at the hearing that he could not understand English. Based on our review of the record we cannot find the district court's determination that he understood English clearly erroneous.

Further, defendant's conduct indicates he freely consented to a search of the vehicle. He stood by as the officer searched the car, *see United States v. Corral,* 899 F.2d 991, 994 (10th Cir.1990), and he assisted the officer in moving bags and opening the tailgate and passenger door. The district court's finding that defendant voluntarily consented to the search is not clearly erroneous.

### III

 Finally, defendant asserts that he received ineffective assistance of counsel at his suppression hearing. We follow the general rule that "ineffective assistance of counsel claims cannot be resolved on direct appeal when the claim has not been raised in the district court." *United States v. Kay,* 961 F.2d 1505, 1508 (10th Cir.1992). This rule "encourages development of a record on the tactical reasons for trial counsel's decisions, the extent of trial counsel's alleged deficiencies, and the asserted prejudicial impact on the outcome of the trial." *Beaulieu v. United States,* 930 F.2d 805, 807 (10th Cir.1991).

Defendant asserts that his counsel's failure to offer evidence concerning defendant's understanding of Barney's request to search the vehicle and of his right to refuse consent prejudiced his case. He also argues that counsel's cross-examination of Barney about whether defendant understood the request to search was ineffective. We cannot determine

the merits of defendant's ineffectiveness claim on the transcript of the suppression hearing alone, *see Kay,* 961 F.2d at 1508; *see also United States v. Ugalde,* 861 F.2d 802, 804 (5th Cir.1988) (in only a few rare cases is the record sufficiently complete on appeal to permit a fair evaluation of an ineffectiveness of counsel claim), *cert. denied,* 490 U.S. 1097, 109 S.Ct. 2447, 104 L.Ed.2d 1002 (1989); therefore we decline to address this issue on appeal. We do so without prejudice to defendant's right to challenge the effectiveness of defense counsel in a collateral attack under 28 U.S.C. § 2255.

AFFIRMED.