UNITED STATES of America, Plaintiff,

v.

Timothy K. WOODARD, Jr. and Percy L. McClendon, Defendants.

No. 94–10052.

United States District Court, D. Kansas.

Dec. 12, 1994.

Terrance Jerry Muth, Daniel V. Saville, Wichita, KS, for Timothy K. Woodard, Jr.

Cyd K. Gilman, Office of Federal Public Defender, Wichita, KS, for Percy L. McClendon.

Lanny D. Welch, Office of United States Atty., for U.S.

### MEMORANDUM AND ORDER

THEIS, District Judge.

This matter is before the court on several pretrial motions filed by the defendants. Both defendants are charged with possession with intent to distribute 48 grams of crack cocaine. Defendant Woodard is also charged with possession with intent to distribute 59 grams of marijuana. The arrests came about following a tip that a "Tim", who worked for the Wichita Fire Department, was selling marijuana. Surveillance was conducted on 1724 South Battin, which was determined to be Woodard's home address. On April 26, 1994, several police officers went to Woodard's home and knocked on the door. The officers informed Woodard that there had been complaints of drug activity. Woodard allegedly consented to a search of the house. The officers discovered crack cocaine in the microwave oven and marijuana hidden behind the stove in the kitchen.

### I. Discovery Motions

The defendants have filed routine discovery motions. Woodard has filed: Motion for discovery (Doc. 14); Motion for *Brady* and Rule 16 evidence (Doc. 35); Motion for disclosure of prior convictions and bad acts (Doc. 34); and Motion in limine regarding prior convictions and bad acts (Doc. 36). McClendon has filed: Motion for *Brady* and Rule 16 evidence (Doc. 20); Motion in limine regarding prior convictions and bad acts (Doc. 21); and Motion for disclosure of prior convictions and bad acts (Doc. 22).

The government has responded that it has provided or will provide the required discovery in this case. Any discovery that has not yet been turned over to the defendants shall be disclosed no later than ten days prior to trial so as to avoid surprise. The government has further responded that if it intends to offer in its case in chief evidence of prior convictions and bad acts it will notify the defendants. The motions for disclosure of prior convictions and bad acts shall be granted. The motions in limine shall be deferred until the time of trial.

### II. Motion to Suppress, Doc. 30

Defendant Woodard has filed a motion to suppress, arguing that he did not voluntarily consent to a search of his home. Detective Alan Prince, Detective Phil Jacob and Lt. Duffy Doyle of the Wichita Police Department testified at the hearing. Their testimony reveals the following facts.

In January 1994, Wichita police received an anonymous telephone tip that an individual by the name of Tim or Tim Woodard, who worked for the Wichita Fire Department, was involved in drug activity. On March 23 or 24, 1994, the police received information in person from a source who requested anonymity that Tim Woodard was possibly selling drugs. Police officers ascertained that the defendant, Timothy K. Woodard, Jr., was employed by the Wichita Fire Department.

On a few occasions in April 1994, police conducted surveillance at Woodard's residence at 1724 South Battin, Wichita, Kansas. The police officers were unable to verify any drug activity based on their surveillance. On April 25, 1994, the officers decided that, as a last resort, they would go to Woodard's residence and speak to him (a "knock and talk") the next day.

On April 26, 1994, Lt. Doyle was conducting surveillance at Woodard's residence beginning at approximately 8:20 a.m. Woodard was at home. A red Honda driven by codefendant Percy McClendon arrived at the residence. McClendon entered the residence, then left, and subsequently returned to the residence. Doyle was joined by Detectives Jacob and Prince at approximately 9:45 a.m. At approximately 9:49, the officers proceeded to the front door of Woodard's residence. Detective Prince stood in the yard where he could see the side of the building and monitor the back door.

Detective Jacob and Lt. Doyle went to the front porch. Jacob knocked on the locked storm door for approximately 15 seconds. Someone inside the residence pulled aside the curtain and let it drop, but no one answered the door. The officers waited a moment before knocking again. The second time that Jacob knocked on the door, defendant Woodard opened both the inside door and the storm door.

The officers showed their badges and identified themselves as Wichita police officers with the Drug Interdiction Unit. Jacob asked to speak to a person named Tim who lived there. Woodard identified himself as that person. Jacob told Woodard that they were following up on a complaint that there was drug activity occurring in the residence. Woodard responded that the tip was ridiculous and that he did not touch the stuff. Woodard also stated that he was a firefighter. Jacob stated that the officers wanted to search (or look around) his residence for drugs. Jacob did not hear a response to this first request to search the residence. Prince also did not hear any answer from Woodard. Doyle testified, however, that he heard Woodard consent to the search at this point. Woodard walked away from the front door

and disappeared inside the residence, leaving both the front door and the storm door standing open. Jacob was not sure whether Woodard had given consent, so he remained standing outside on the front porch.

Woodard reappeared in the living room after approximately 15 seconds and looked at the officers. The front doors were still open and Jacob was still standing in the doorway with Doyle behind him. Jacob again asked if they could come in and search. Woodard responded that the officers could come on in and look around and that he had nothing to hide.

Jacob and Doyle entered the residence. Detective Prince entered shortly after them. Jacob spoke to Woodard and obtained some information such as Woodard's date of birth and Social Security number. Woodard began cleaning and straightening up the residence while the officers began searching the residence. Codefendant Percy McClendon exited the bathroom and entered the living room shortly after the officers arrived. Jacob asked for his name. McClendon responded with his name and stated that he was just visiting.

Jacob searched the living room. Detective Prince searched the bathroom. Prince seized two pagers, a billfold and cash that he found in the bathroom trash can. Prince then asked permission to search McClendon's car. McClendon consented and handed over his car keys. Jacob and Doyle went outside to search the car.

Prince remained inside to search the kitchen of the residence. Prince opened the door to the microwave oven and found crack cocaine. Prince called the other two officers back inside. Both defendants were placed under arrest. At some subsequent time, a quantity of marijuana was discovered hidden behind the stove.

Jacob testified that he wanted to separate the two defendants, so he took Woodard into the bedroom. While in the bedroom, Woodard made a statement to Jacob. Woodard stated that he consented to a search of his residence because he was not involved in drugs. Woodard then encouraged Jacob to search the dresser and closet.

Later on at the police station, Woodard made another statement regarding his consent to the search. Jacob testified that he thought it unusual that Woodard had left the officers on the front porch with the door standing wide open. Jacob asked Woodard about this. Woodard stated that he had consented to the search when he walked away from the open front door to the residence. When he returned moments later and the officers were still standing outside, Woodard consented to the search a second time.

The three police officers were dressed in plain clothes. No weapons were displayed during the encounter. The officers made no physical contact with the Woodard. No threats or promises were made by the officers. The officers did not inform Woodard that he had the right to refuse to consent. The officers did not obtain a written consent.

The officers testified that during their encounter, Woodard was friendly and relaxed. Woodard seemed alert and appeared to understand what was going on. Woodard did not seem overly concerned about the search as it was occurring. Woodard responded appropriately to the officers' questions and expressed no confusion about the purpose of the visit. Both defendants were free to move around the residence while the search was proceeding. Woodard never told the officers not to search any particular area, nor did he attempt to revoke his consent.

Much time was spent at the hearing in an attempt to ascertain whether Det. Jacob asked to "search" or to "look around." Given the testimony at the hearing and the statements contained in the officers' reports, it is likely that both expressions were used. Woodard never asked the officers what they meant by "look around." Even if the officers stated only that they wanted to "look around," the evidence indicates that Woodard understood that the officers wanted to search the residence for drugs.

█ Defendant Woodard argues that his encounter with the police was a seizure and that he did not voluntarily consent to the search.

█ Police-citizen encounters fall generally into three categories: (1) voluntary encounters, which are not seizures and do not implicate the fourth amendment; (2) investigative detentions, which are seizures within the meaning of the fourth amendment and must be supported by reasonable suspicion; and (3) arrests, which must be supported by probable cause. *United States v. Evans,* 937 F.2d 1534, 1537 (10th Cir.1991). A seizure does not occur simply because a police officer approaches an individual and asks a few questions. *Florida v. Bostick,* 501 U.S. 429, 433–34, 111 S.Ct. 2382, 2386, 115 L.Ed.2d 389 (1991). To determine if a particular encounter constitutes a seizure, the court must determine based on the totality of the circumstances whether the police conduct would have communicated to a reasonable person that the person was not free to decline the officers' requests or to terminate the encounter. *Id.,* 501 U.S. at 439–40, 111 S.Ct. at 2389. Factors to be considered in determining whether the encounter is a seizure include: the location of the encounter, particularly whether it occurs in a public place; whether the officers touch or physically restrain the defendant; whether the officers are uniformed or in plain clothes; whether the officers display their weapons; the number, demeanor and tone of voice of the officers; whether and for how long the officers retain the defendant's personal effects or identification; and whether the officers have advised the defendant of his right to terminate the encounter or refuse consent. *United States v. Zapata,* 997 F.2d 751, 756–57 (10th Cir.1993).

Woodard argues that the encounter was a seizure because it occurred at his home; the officers restrained his movement and detained him for approximately ten minutes; there were three officers; those officers were also employed by the same entity that employed Woodard (the City of Wichita); and the officers did not advise him that he had the right to terminate the encounter or refuse consent.

█ Based on the evidence presented, the court concludes that the encounter with the police was a voluntary one. That the defendant was at home when approached by the

police is not determinative. The location of an encounter is but one factor in the totality of circumstances test. *United States v. Little,* 18 F.3d 1499, 1503 (10th Cir.1994) (en banc). Woodard was inside his home and the officers were on the porch. The officers did not force their way inside. The officers did not physically restrain Woodard's movement or prevent him from ending the conversation. Woodard could have terminated the encounter at any time by closing the front door.

■ That Woodard was not informed of his right to refuse to answer the officers' questions is also not determinative of whether a seizure occurred. There is no per se rule requiring such an advisement. *Id.* at 1505. Contrary to the defendant's arguments, the court finds no veiled threats that the complaint of drug activity would create problems with Woodard's job. The officers knew that Woodard was employed by the City of Wichita. However, the officers did not raise the subject of Woodard's job. Woodard volunteered that he was a firefighter with the City. The officers said nothing that could be construed as a threat that this complaint would hang over Woodard's head if he did not cooperate.

Other factors indicate that the encounter at the front door was a voluntary: the officers were in plain clothes; they did not display their weapons; they did not touch or physically restrain the defendant. *Zapata,* 997 F.2d at 756–57. The court concludes that a reasonable person would have understood that he was free to decline to answer the officers' questions and to end the encounter by closing the door.

■ Defendant Woodard next argues that he did not voluntarily consent to the search. The defendant acknowledges that a search and seizure may be made without probable cause if voluntary consent is given. *See United States v. Rivera,* 867 F.2d 1261, 1265 (10th Cir.1989). The proper test in consent search cases is not whether there was a waiver of the defendant's fourth amendment rights, but whether the consent to search was voluntary under the totality of the circumstances. *United States v. Price,* 925 F.2d 1268, 1270 (10th Cir.1991). There is no presumption against waiver of fourth

amendment rights. *See id.* at 1270–71. Voluntariness of consent is a question of fact to be determined from the totality of the circumstances and is a matter which the government bears the burden of proving. *United States v. Sanchez–Valderuten,* 11 F.3d 985, 990 (10th Cir.1993). The government must show that there was no duress or coercion, express or implied, that the consent was unequivocal and specific, and that it was freely and intelligently given. *Id.* Whether a person is informed that he need not consent to a search is only one factor in determining whether consent was voluntary. *Id.*

The court concludes as a matter of fact based on the totality of the circumstances that Woodard voluntarily consented to the search. Woodard twice gave consent for the officers to enter his home and search for drugs. There was no evidence of any overt coercion. The officers did not display weapons. There was no evidence to indicate that the officers employed an insisting or demanding tone or manner. There was no physical contact with Woodard. Woodard argues that duress or coercion were involved, since the officers knew he worked for the City of Wichita. The officers obtained that information through the anonymous tip. Further, the officers did not bring up the subject of Woodard's employment, Woodard did. The officers said nothing which could be construed as a threat that there might be repercussions if Woodard refused to consent.

Detective Jacob sought permission specifically to search for drugs in the residence. Woodard did not appear to be confused by Jacob's request. Woodard's actions in walking away, leaving the front door standing open and the officers on the porch, were equivocal and were not understood by Jacob to constitute a consent to search. When the officers did not enter the residence, Woodard returned to the open front door and told the officers to come in. Woodard's statements after his arrest indicate that he understood the request and that he consented. These facts lead the court to conclude that Woodard's consent was unequivocal, specific, and freely and intelligently given.

Woodard also argues that the search exceeded the scope of the consent. The standard for measuring the scope of a person's consent under the fourth amendment is that of objective reasonableness, i.e., what the typical reasonable person would have understood by the exchange between the officer and the subject of the search. *Florida v. Jimeno*, 500 U.S. 248, 249–52, 111 S.Ct. 1801, 1803–04, 114 L.Ed.2d 297 (1991). "The scope of a search is generally defined by its expressed object." *Id.*, 500 U.S. at 251, 111 S.Ct. at 1804. The question of the scope of consent is part of the voluntariness inquiry. *United States v. Price*, 925 F.2d at 1271.

Woodard gave a general consent to search the residence for drugs. The court finds that Woodard understood the scope of the requested search, given that the officers expressly stated that they were looking for drugs. A reasonable person would have understood that consent to search encompassed any place in which drugs could be hidden, including the interior of the microwave oven. There was no evidence that Woodard attempted to limit the scope of the search in any way. The search was within the scope of the consent given. Accordingly, the motion to suppress shall be denied.

### III. Motion to Sever, Doc. 23 (McClendon) and Doc. 31 (Woodard)

Both defendants have filed motions to sever alleging a *Bruton*[1] problem. After Woodard's arrest, Woodard made a statement implicating McClendon. Woodard told Det. Jacob that McClendon brought the crack cocaine into the house. McClendon also made a statement to the police, in which he asserted that the crack cocaine belonged to Woodard.

The government argues that mutually antagonistic defenses (i.e., "finger pointing") are not per se prejudicial. The Tenth Circuit has recently held that finger pointing is not sufficiently prejudicial to warrant severance. *United States v. Linn*, 31 F.3d 987, 992 (10th Cir.1994). The government has agreed to redact the statements which impli-

cate the other defendant so as to avoid the *Bruton* problem. The government has agreed not to use these inculpatory statements either in its case in chief or on rebuttal.

As the Supreme Court has recently stated, Rule 14 leaves the determination of prejudice and any remedy that may be necessary to the sound discretion of the trial court. *Zafiro v. United States*, —— U.S. ——, 113 S.Ct. 933, 122 L.Ed.2d 317 (1993). If prejudice may be remedied by proper instructions (e.g., to consider each defendant separately; that the government bears the burden of proving each defendant guilty of the offense charged), severance is not mandated. *Id.* In *Zafiro*, severance was not required even though defendant Zafiro testified that she was merely Martinez's girlfriend and knew nothing of the alleged drug activity, and defendant Martinez argued that he was only visiting his girlfriend and he had no idea she was involved in drugs.

The court shall deny the motion to sever. The finger pointing defenses are not per se prejudicial and do not require severance. The asserted *Bruton* problem can be cured by redaction of the statements. The court will instruct the jury to consider each defendant separately. Defendants will be afforded the opportunity to request any additional instructions necessary to cure whatever prejudice may occur from a joint trial.

**IT IS BY THE COURT THEREFORE ORDERED** that defendant Woodard's Motion for discovery (Doc. 14) and Motion for *Brady* and Rule 16 evidence (Doc. 35) are moot.

**IT IS FURTHER ORDERED** that defendant Woodard's Motion for disclosure of prior convictions and bad acts (Doc. 34) is hereby granted.

**IT IS FURTHER ORDERED** that defendant Woodard's Motion in limine regarding prior convictions and bad acts (Doc. 36) is deferred until trial.

**IT IS FURTHER ORDERED** that defendant McClendon's Motion for *Brady* and Rule 16 evidence (Doc. 20) is moot.

---

1. *United States v. Bruton*, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968).

IT IS FURTHER ORDERED that defendant McClendon's Motion in limine regarding prior convictions and bad acts (Doc. 21) is deferred until trial.

IT IS FURTHER ORDERED that defendant McClendon's Motion for disclosure of prior convictions and bad acts (Doc. 22) is hereby granted.

IT IS FURTHER ORDERED that defendant Woodard's Motion to suppress (Doc. 30) is hereby denied.

IT IS FURTHER ORDERED that defendant McClendon's Motion to sever (Doc. 23) and defendant Woodard's Motion to sever (Doc. 31) are hereby denied.