**UNITED STATES of America, Plaintiff,**

**v.**

**Alfredo TORRES, Jose Torres, a.k.a Chepo, Andres Delafuente, Oscar Torres, Saul Torres, Abel Longoria, Pedro Ulloa, Erasmo Castaneda, Eloina Torres, a.k.a. Eloina Saucedo, Blanca Alicia Sandoval, Jose Gomez, a.k.a. Chepe, and Juan Gomez, Defendants.**

**Civil Action No. 97–20034–EEO.**

United States District Court, D. Kansas.

Oct. 2, 1997.

---

Michael L. Harris, Office of Federal Public Defender, Kansas City, KS, Cenobio John Lozano, Jr., Harrisonville, MO, for Alfredo Torres.

Richard L. Carney, Kansas City, KS, for Jose Torres.

Scott C. Gyllenborg, Norton, Hubbard, Ruzicka & Kreamer, L.C., Olathe, KS, for Andres Delafuente.

Michael G. Highland, Bonner Springs, KS, for Oscar Torres.

James T. George, Lawrence, KS, for Abel Longoria.

John C. Donham, Overland Park, KS, for Pedro Ulloa.

J. Steven Schweiker, Overland Park, KS, for Erasmo Castaneda.

Theodore J. Lickteig, Overland Park, KS, for Eloina Torres.

Robert A. DeCoursey, Kansas City, KS, for Blanca Alicia Sandoval.

Thomas E. Foster, Foster & Foster, Overland Park, KS, for Jose Gomez.

Robert W. Manske, Olathe, KS, for Juan Gomez.

## MEMORANDUM AND ORDER

EARL E. O'CONNOR, Senior District Judge.

Pending before the court are the following pre-trial motions of various defendants in the above-entitled case:

Motion of defendant Eloina Torres to exceed maximum fees and for interim vouchers (Doc. # 178);

Motion of defendant Jose Gomez to suppress (Doc. # 176);

Motion of defendant Abel Longoria to suppress evidence (Doc. # 173);

Motion of defendant Alfredo Torres to suppress a letter illegally seized from the defendants (Doc. # 174);

Motion of defendant Erasmo Castaneda to suppress evidence (Doc. # 145);

Motion of defendant Jose Gomez to sever (Doc. # 170);

Motion of defendant Jose Torres to sever (Doc. # 175);

Motion of defendant Eloina Torres to sever her case for a trial separate from that of her co-defendants (Doc. # 155);

Motion of defendant Alfredo Torres to sever his charges for a separate trial from those of the other defendants (Doc. # 157);

Motion of defendant Blanca Alicia Sandoval to sever (Doc. # 147);

Government's Motion for handwriting exemplars as to defendants Eloina Torres, Blanca Alicia Sandoval and Jose Gomez (Doc. # 171);

Government's Motion to amend motion for handwriting exemplars (Doc. # 207);

Motion of defendant Eloina Torres to dismiss Indictment for loss of testimonial evidence (Doc. # 179);

Motion of defendant Blanca Alicia Sandoval to join in motion's (Doc. # 148);

Motion of defendant Oscar Torres to join in motions of other defendants (Doc. # 160);

Motion of defendant Abel Longoria to join motions (Doc. # 172);

Motion of defendant Jose Gomez to join motions (Doc. # 177); and

Motion of defendant Erasmo Castaneda to disclose criminal record and inducements (Doc. # 210).

The court has carefully reviewed the arguments, the applicable law, and the evidence adduced at the hearing held on September 29, 1997. Although the court announced its ruling at the hearing, this order is intended to memorialize those rulings in greater detail.

### Motions to Exceed Maximum Fees and for Interim Vouchers.

Eloina Torres' counsel, Theodore Lickteig, has filed a motion To Exceed Maximum Statutory Fees and for Permission to Submit Interim Vouchers (Doc. # 178). The court finds such motion is premature. Based on the facts and circumstances before the court at the present time, the court is unable to certify that defense counsel is entitled to payment in excess of the maximum amount of attorneys' fees provided in 18 U.S.C. § 3006A(d)(2). Accordingly, the court will defer ruling on the motion at this time.

Robert Manske, Juan Gomez' counsel, has notified the court that he intends to withdraw his motion to Exceed Maximum Statutory Fees (Doc. # 158). In light of counsel's withdrawal of his motion, such motion will be denied as moot.

### Motions to Suppress.

#### Wire and Oral Communications.

Defendant Jose Gomez has submitted a motion to suppress evidence of wire and oral communications obtained pursuant to 18 U.S.C. § 2518 (Doc. # 176). In support of this motion, Jose Gomez "joins in the arguments and authorities submitted by Juan Gomez and the other parties herein." The court finds that the arguments contained in the motion of Juan Gomez are nothing more than a bald recitation of the subsections of the statute. The motion makes little effort to apply the particular facts of this case to the statutory provisions. As to defendant's claim that the authorization order unlawfully and unconstitutionally authorized the interception of communications on an unlimited

number of telephone lines unknown and un-specified in either the application, affidavit or order by permitting the interception of telephone calls rerouted using "call forwarding features," the court finds defendant's claim inapposite, inasmuch as such authorization does not appear in any of the orders.

Likewise, defendant's assertion that the order gave the intercepting officers "the blanket authority to 'break in [on calls deemed non-pertinent] at thirty second intervals in order to ascertain whether or not the call continues to be non-criminal' regardless of the nature of the call" is inapplicable because such authorization does not appear anywhere in the orders.

Defendant's allegation that the inventory required by 18 U.S.C. 2518(8) was not served on Juan Gomez is also without merit. The inventory was served on Juan Gomez by mailing it to his counsel pursuant to an order issued by U.S. District Judge G.T. Van Bebber on September 8, 1997, two days before the motion was filed. Presumably, it had not yet been delivered when counsel drafted his motion.

■ At the hearing, Jose Gomez focused his argument more narrowly on the issue of the identification of Jose Gomez in the applications for orders authorizing the interception of wire and oral communications. Defendant contends he was not specifically identified in the applications, and thus the applications were defective. The court finds defendant's argument is without merit because, under the facts, the law does not require such specificity. 18 U.S.C. § 2518(1)(b)(iv) requires only that the government's application shall include "the identity of the person, *if known*, committing the offense and whose communications are to be intercepted." Thus, the law does not require the government to list people individually unless the government knows the person is committing an offense.

At the hearing, AUSA Patton explained that the reason the government's application did not name Jose Gomez was because the government had not identified Jose Gomez at that time. The applications and orders specifically identify certain individuals, and then state, "and others as yet unknown." The

court finds that such identification is sufficient, under the circumstances.

■ In sum, the court is very familiar with the government's application, and our order authorizing interception of wire and oral communications in this case. We find that there was full compliance with all the requirements of 18 U.S.C. S § 2517 and 2518. "[A] wiretap authorization order is presumed proper, and the defendant carries the burden of overcoming this presumption." *United States v. Castillo–Garcia,* 117 F.3d 1179, 1186 (10th Cir.1997) (citing *United States v. Quintana,* 70 F.3d 1167, 1169 (10th Cir. 1995)). Based on the present showing, defendant has failed to carry his burden. Accordingly, defendant Jose Gomez' motion to suppress the contents of all wire and oral communications intercepted pursuant to 18 U.S.C. § 2518 should be and hereby is denied.

Robert Manske, Juan Gomez' counsel, has notified the court that he intends to withdraw his Motion to Suppress Evidence Derived From Electronic Surveillance (Doc. # 180). In light of counsel's withdrawal of his motion, such motion will be denied as moot.

**Videotapes.**

Defendant Abel Longoria seeks to suppress certain audio and video recordings made by an informant (Doc. # 200). Specifically, defendant seeks to exclude all seized conversations on audio and video tape that "occurred outside of the presence of the informant." Defendant also seeks to suppress all video images of him that were obtained outside the presence of the informant.

In his brief, defense counsel did not identify which tapes were allegedly made when the informant was not present. At the hearing, counsel did specify that possibly two tapes were at issue. AUSA Patton stated at the hearing that he intends to meet with defense counsel to review the tapes in question. Government and defense counsel represent that they agree on excluding portions of the two tapes, if it can be shown that the informant was not present in the room at the time when the taping occurred. It appears this matter may be resolved without a formal ruling from the court; therefore, the court

will defer ruling on this matter at this time. If it is determined that the informant was not present during the recording of any portion of the tapes, the motion will be sustained as to those taped portions.

■ Defendant also seeks to suppress all audio and video tapes of conversations that were in Spanish, even though made in the presence of the informant and recorded by him. Defendant cites no case law or other authority to support his contention. The law is well settled that where a party to a conversation consents to the recording of that conversation, such recording is lawful. *United States v. Rodriguez-Garcia*, 983 F.2d 1563, 1569 (10th Cir.1993); *United States v. Laetividal-Gonzalez*, 939 F.2d 1455, 1460–61 (11th Cir.1991), *cert. denied*, 503 U.S. 912, 112 S.Ct. 1280, 117 L.Ed.2d 505 (1992) (rule applicable to both audio and video). The courts that have addressed the issue have held that a defendant has no reasonable expectation of privacy in statements made in the presence of a government agent, even though the agent was not participating in the conversation. *See United States v. Coven*, 662 F.2d 162 (2nd Cir.1981), *cert. denied*, 456 U.S. 916, 102 S.Ct. 1771, 72 L.Ed.2d 176 (1982).

■ The court finds that a conversation conducted in Spanish in the presence of a third person does not carry any expectation of privacy "that society is prepared to recognize as 'reasonable,'" *Katz v. United States*, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967). Such a holding would imply that someone speaking Spanish is entitled to a greater expectation of privacy than someone who only speaks English. Accordingly, defendant's motion to suppress audio and video recordings on the grounds that the conversations were in Spanish should be and hereby is denied.

**Letter.**

Defendant Alfredo Torres seeks to suppress a letter seized by a government informant from a vehicle on or about June 21, 1996 (Doc. # 174). The government, in response to this motion, indicates to the court that it does not intend to use, mention, or refer to the letter at trial. The court finds, in light of the government's representations,

that the motion should be and hereby is denied as moot.

**Marijuana seized from tires of truck.**

Defendant Erasmo Castaneda seeks to suppress evidence arising from the stop of his pickup truck by Kansas Highway Patrol Trooper B.K. Smith on May 14, 1997 (Doc. # 145). He contends the approximately 48 kilograms of marijuana discovered in containers attached to the tires of the truck must be suppressed, because neither the passenger nor the driver of the truck gave free and voluntary consent to the search. Defendant does not claim that the stop itself was invalid. Under current Tenth Circuit law, we find the stop itself was a valid stop. See *United States v. Botero-Ospina*, 71 F.3d 783, 787 (10th Cir.1995), *cert. denied*, —— U.S. ——, 116 S.Ct. 2529, 135 L.Ed.2d 1052 (1996).

■ The defendant's argument that he and Medina did not understand English well enough to consent to the search is not borne out by the facts. At the hearing, Smith testified that neither Castaneda nor Medina gave any indication to him that they did not understand the questions he asked, and they conversed freely. Trooper Smith testified that he speaks enough Spanish to be able to ask routine questions, but did not feel it was necessary to do so since they were communicating adequately in English. Smith testified that Medina "seemed very able to converse in English," and Castaneda "did not give any indication that he did not understand my questions in English." Both passenger and driver gave every indication of having adequate *"receptive* English language skills" to consent to the search. *United States v. Sanchez-Valderuten*, 11 F.3d 985, 990–91 (10th Cir.1993). Defendant provided no direct evidence at the hearing that he or Medina did not understand the questions Trooper Smith had asked in English.

■ We find defendant's contention that they were not advised of their *Miranda* rights irrelevant, as neither he nor Medina were in custody. Nor is their consent invalid simply because Trooper Smith failed to inform either Castaneda or Medina of their right to withhold consent. *See Schneckloth v. Bustamonte*, 412 U.S. 218, 234, 93 S.Ct.

2041, 2051, 36 L.Ed.2d 854 (1973) (informing a defendant of his right to refuse consent is not a prerequisite to establishing voluntary consent). Whether a defendant is informed that he need not consent to a search is only one factor in determining whether consent was voluntary. *See Sanchez–Valderuten* 11 F.3d at 990 (citing *United States v. Ward,* 961 F.2d 1526, 1533 (10th Cir.1992)). Based on the totality of the circumstances, we do not find this factor controlling.

At the hearing, defense counsel focused his argument on the following contentions: that Trooper Smith did not have an objective, reasonable suspicion to continue to detain Medina and Castaneda after Smith returned their papers; that their consent was involuntary because they were never told they were "free to leave;" that Castaneda's consent was "not unequivocal" because it was just a nod of the head to demonstrate consent; and that, even if voluntary, the actual search exceeded the scope of the consent given.

An officer conducting a routine traffic stop may perform a computer check on the driver's license and the vehicle registration papers. *United States v. Anderson,* 114 F.3d 1059, 1063 (10th Cir.1997) (citing *United States v. McRae,* 81 F.3d 1528, 1535–36 n. 6 (10th Cir.1996)). Once the officer has conducted such a check, and "the driver has produced a valid license and proof that he is entitled to operate the car, [the driver] must be allowed to proceed on his way, without being subject to further delay by police for additional questioning." *Id.* (citing *United States v. Gonzalez–Lerma,* 14 F.3d 1479, 1483 (10th Cir.), *cert. denied,* 511 U.S. 1095, 114 S.Ct. 1862, 128 L.Ed.2d 484 (1994)). The officer may only detain the driver and conduct further questioning if, during the traffic stop, "the officer acquires an objectively reasonable and articulable suspicion that the driver is engaged in illegal activity." *Id.* (citing *United States v. Sandoval,* 29 F.3d 537, 540 (10th Cir.1994)). Additionally, if the encounter between the officer and the driver ceases to be a detention, but becomes consensual, and the driver voluntarily consents to additional questioning, no further Fourth Amendment seizure or detention occurs. *Id.* (citing *Sandoval,* 29 F.3d at 540).

"[A]fter an officer issues the citation and returns any materials provided, the driver is illegally detained only if the driver has objectively reasonable cause to believe that he or she is not free to leave." *Id.* (citing *United States v. Shareef,* 100 F.3d 1491, 1501 (10th Cir.1996)). "While we have held that return of the driver's documentation is required before a detention can end, we have also observed that return of such documentation does not always indicate that an encounter has become consensual." *Id.* (citing *Elliott,* 107 F.3d 810, 814 (10th Cir. 1997)). A "coercive show of authority, such as the presence of more than one officer, the display of a weapon, physical touching by the officer, or his use of a commanding tone of voice indicating that compliance might be compelled" may suggest that a detention has not ended. *Id.* (citing *United States v. Turner,* 928 F.2d 956, 959 (10th Cir.), *cert. denied,* 502 U.S. 881, 112 S.Ct. 230, 116 L.Ed.2d 187 (1991)). A trooper need not specifically advise someone that they are free to leave in order for an encounter to be consensual.*Id.* (citing *Ohio v. Robinette,* —— U.S. ——, ——, 117 S.Ct. 417, 421, 136 L.Ed.2d 347 (1996) (rejecting per-se rule that detention pursuant to a traffic stop cannot become consensual until officer has told detainee that he is free to leave); and *Elliott,* 107 F.3d at 814 (noting that encounter was consensual even though officer did not tell driver she was free to go)).

In this case, Trooper Smith testified that he asked Medina if he would exit the vehicle and sit in the patrol car. After asking Medina some questions, Smith issued Medina a warning and a ticket for no valid driver's license, and then returned Medina's documents to him. At this juncture, Smith told Medina, "that is all I have for you." Smith then asked Medina if he could ask him further questions. Medina consented to further questioning. According to Smith, Medina did not give any indication that he did not understand the question. Smith then asked if they were hauling anything illegal in the vehicle, such as guns, drugs, weapons, or contraband. Medina stated no. Smith then asked for consent to search the vehicle. Medina gave consent to search the truck. At that point, both Smith and Medina exited the

patrol car, and approached the truck. Smith informed Castaneda that he had asked Medina for consent to search the vehicle, and Medina had given him consent. He then asked Castaneda for consent to search the vehicle, and Castaneda nodded his head "yes."[1] After Smith commenced searching the truck, Trooper Nicholson arrived on the scene and assisted in the search.

We find that at the time Trooper Smith handed back Medina's papers and told him "that is all I have for you," the encounter ceased to be a detention, but became consensual. Both Medina and Castaneda voluntarily consented to additional questioning. No evidence was presented to indicate a "coercive show of authority," such as the presence of more than one officer, the display of a weapon, physical touching by the officer, or his use of a commanding tone of voice. While Trooper Smith did not specifically tell Medina or Castaneda that they were "free to leave," that is not required for an encounter to be consensual. *Anderson,* 114 F.3d at 1064. Accordingly, neither Medina nor Castaneda were being illegally detained when Trooper Smith asked to search the vehicle.

■ Even if the encounter could be construed as a detention or seizure, we find the detention was lawful, because Trooper Smith had a reasonable suspicion of criminal activity sufficient to justify the continued detention. A continued detention beyond the time necessary to issue a citation is lawful if specific and articulable facts and rational inferences drawn from those facts give rise to a reasonable suspicion of criminal activity. *United States v. Soto,* 988 F.2d 1548, 1554 (10th Cir.1993). Castaneda does not argue that Smith lacked reasonable suspicion to make the initial traffic stop, but that they were unlawfully detained beyond the time necessary to issue the initial traffic citation. At the hearing, Castaneda cited *United States v. Fernandez,* 18 F.3d 874 (10th Cir. 1994) as support for his position.

We find the facts and circumstances of *Fernandez* distinguishable, and thus unpersuasive authority. There, the district court found the officer had reasonable suspicion to

justify a continued detention based on three factors: improper lane travel; unusual nervousness of Fernandez; and the "startled awakening and stiff demeanor" of the vehicle passenger. The Tenth Circuit reversed, concluding that the improper lane travel violation partly justified the initial stop, but was insufficient to warrant the continued detention. The court also concluded that while nervousness may be a factor, it can never, by itself, create a reasonable suspicion of criminal activity. The court reasoned:

> At no time did [the officer] attempt to justify the continued detention of Fernandez based on any specific, objective factors supporting a reasonable inference that the truck was stolen, that the defendant was trafficking in drugs, or that he was committing any other criminal offense.

*Id.* at 880. The court noted that the officer's testimony regarding his "sixth sense," and his detection of "tension in the air," strongly suggested that he was acting more on an unparticularized hunch than on reasonable and objective suspicion.*Id.*

In contrast, Trooper Smith testified that he was presented with the following factual scenario: Medina, the driver, handed Smith a Texas identification card, but upon questioning, Smith learned Medina did not live in Texas, but in Oklahoma City. Medina said he was going to visit friends and family in Kansas City, but upon questioning, stated he did not know their names, where they lived, or their phone numbers. He said Castaneda knew where they lived. Castaneda told Smith that he was driving from Zacatecas, Mexico, where he had been for a couple of days, that he had picked up Medina in Oklahoma City, and was taking him to Kansas City. In addition, Smith observed that both Medina and Castaneda appeared to be extremely nervous. Smith testified that Castaneda's hands were sweating and shaking, his breathing was rapid and shallow, and his nervousness was way beyond the degree of nervousness usually exhibited by someone during a traffic stop. Smith learned through a dispatch report that Medina did not have a

---

1. At the hearing, Officer Smith explained that in portions of his arrest report, he accidentally referred to the "passenger" as the "driver." The substance of Smith's written account of the incident as stated in his arrest report is otherwise consistent with his testimony at the hearing.

driver's license, and Castaneda had a criminal history. Based upon the facts and circumstances, we find Trooper Smith's decision to continue to detain and question Medina and Castaneda was based not on an "unparticularized hunch," but on a reasonable and objective suspicion of criminal activity.

■ At the hearing, Castaneda urges the court to find that his consent was "not unequivocal" because it was just a nod of the head to demonstrate consent. Defense counsel has cited the court no authority to support his position that nodding the head is insufficient to demonstrate valid consent. He has presented no facts which would indicate the head nodding did not signify affirmance of the officer's request. The record does not support Castaneda's assertion. The court finds by a preponderance of the evidence that the consent of both Medina and Castaneda was unequivocal and fully voluntary.

■ Castaneda next argues that even if the consent was voluntary, the actual search exceeded the scope of the consent given. He cites *United States v. Gastellum*, 927 F.Supp. 1386 (D.Colo.1996), and *United States v. Elliott*, 107 F.3d 810 (10th Cir.1997). Specifically, he argues the consent did not extend to removing the tires from the truck, breaking them down and looking inside, and drilling into the metal containers found within the tires.

■ "The scope of a search is generally defined by its expressed object, and is limited by the breadth of the consent given." *United States v. Anderson*, 114 F.3d 1059, 1065 (10th Cir.1997) (citations omitted). In *Gastelum*, the district court determined that the trooper's search of the vehicle exceeded the scope of any consent given. In making that finding, however, the court emphasized that the trooper asked the defendant if he could "look" in the vehicle; he did not specifically ask if he could "search" the vehicle. He then proceeded to search the panels of the trunk, remove interior panels that had been fastened with screws, pulled up the carpet, and removed two bucket seats from the car. *Id.* at 1390. The court concluded that the officer did more than "look" through the vehicle. Such is not the factual scenario in the instant case. Here, Trooper Smith very specifically asked both Medina and Castaneda if he could "search" the vehicle. Both consented to the search.

In *Elliott*, the officer asked if he could "look through the trunk there and see what you got in there? I don't want to look through each item." *Id.* at 815. The officer also told Elliott he just wanted to see how things were "packed" or "packaged." *Id.* The officer then unzipped a bag, observed a package wrapped in paper, took a pocketknife and cut open the package, whereupon the officer discovered drugs. In finding that the drugs resulting from the search should have been suppressed, the court reasoned:

[The officer's] first question to Elliott could reasonably be construed as asking for consent to search the trunk and its contents. Specifically, his request to "look through the trunk," considered by itself, would have conveyed to a "typical reasonable person" that [the officer] was interested in searching the trunk and its contents. *Similar wording used by officers in other cases has typically been construed to allow full searches of automobiles.* For example, in *McRae*, we concluded a defendant's consent to an officer's request to "look in" his car gave the officer authorization to search the car, including lifting up carpeting in the trunk of the car. 81 F.3d at 1537–38....

Significantly, however, [the officer] did not stop with his first question. Instead, he told Elliott that he did not "want to look through each item." Further, he explained to her that he just wanted to see how things were "packed" or "packaged." We conclude that a typical reasonable person would have construed these additional statements as expressly limiting the scope of [the officer's] request.... To us, [the officer's] statements, considered in their entirety, would have conveyed to a reasonable person that [the officer] was interested only in visually inspecting the trunk and its contents, and did not convey his intent to look into any containers in the trunk....

Because he expressly and narrowly limited the scope of his request, it is apparent

that [the officer] exceeded the scope of Elliott's consent. . . .

*Id.* (emphasis added). In the present case, the trooper did not limit the scope of the search request, but simply asked if he could "search the vehicle." Absent specific language limiting the scope of the search request, as was present in *Elliott,* we construe the search request to allow a full search of the vehicle. *Id.* Additionally, both Medina and Castaneda stood around and watched as the troopers conducted the search, and raised no objection as the troopers focused on the tires. *Anderson,* 114 F.3d at 1065. Based on all the facts and circumstances, the search did not exceed the scope of the consent granted.

 Moreover, the court finds that at the time the troopers detected the odor of marijuana and saw the irregularities in the tires, they had reasonable and articulable suspicion that the defendant was engaged in illegal activity. *Mendez,* 118 F.3d at 1431–32. *See also Anderson,* 114 F.3d at 1065–67 (probable cause existed to tow car to highway patrol headquarters to search inside gas tank.) Accordingly, for the foregoing reasons, Castaneda's motion to suppress the marijuana discovered in the truck tires is denied.

### Motions to Sever.

The following defendants have filed motions to sever their case from the other defendants: Jose Gomez (Doc. # 170); Jose Torres (Doc. # 175); Eloina Torres (Doc. # 155); Alfredo Torres (Doc. # 157); and Blanca Alicia Sandoval (Doc. # 147). They contend that they will be prejudiced by a joint trial, because the sheer volume of evidence the government will present regarding the other defendants will have a "spill-over" effect. They claim that the jury may convict them based on the evidence concerning the other defendants. Several defendants also argue that they will be prejudiced because they will be unable to present exculpatory evidence from co-defendants, inasmuch as the co-defendants will likely plead the Fifth Amendment and decline to testify in a joint trial.

 The decision to grant or deny severance is within the trial court's sound discretion. *United States v. Scott,* 37 F.3d

1564, 1579 (10th Cir.1994), *cert. denied,* 513 U.S. 1100, 115 S.Ct. 773, 130 L.Ed.2d 669 (1995). A defendant bears a heavy burden of showing that, without severance, he will suffer clear and actual prejudice. *United States v. Cardall,* 885 F.3d 1131 (10th Cir.1994). Prejudice results only when the evidence is such that the jury cannot compartmentalize it against each defendant. *United States v. Hines,* 696 F.2d 722, 732 (10th Cir.1982). Speculation that the jury will not or cannot follow the court's "compartmentalization" instructions will not justify a severance under Federal Rule of Criminal Procedure 14, as there is a presumption, fundamental to our system of justice, that juries can and will follow the instructions they are given. *Cardall,* 885 F.2d at 668.

The general rule in the Tenth Circuit is that persons jointly indicted should be jointly tried. *United States v. Rinke,* 778 F.2d 581, 590 (10th Cir.1985). It is axiomatic that co-conspirators should be tried together, "'especially where proof of the defendants' complicity in the conspiracy is based on the same evidence and acts."' *Hines,* 696 F.2d at 732 (citation omitted). "In determining the merits of a motion for severance, the trial court must weigh the prejudice to a particular defendant caused by joinder against the obviously important considerations of economy and expedition in judicial administration." *United States v. Petersen,* 611 F.2d 1313, 1331 (10th Cir.1979), *cert. denied,* 447 U.S. 905, 100 S.Ct. 2985, 64 L.Ed.2d 854 (1980).

 The court finds that any concern defendants may have about a potential "spill-over" effect of evidence at trial does not warrant separate trials. The government represents that it will structure the presentation of its proof in such a way as to provide a balanced case against each defendant. Moreover, the court is of the view that its "compartmentalization" limiting instructions will allow the jury to adequately evaluate the evidence as it pertains to each individual defendant.

 In addition, the court finds that defendants' claim that they will be unable to present exculpatory evidence of other co-defendants does not require severance in this case. Most courts refuse to grant a sever-

ance where a defendant claims severance is necessary to obtain the anticipated exculpatory testimony of a codefendant. See *United States v. Gay,* 567 F.2d 916, 919 (9th Cir.), cert. denied, 435 U.S. 999, 98 S.Ct. 1655, 56 L.Ed.2d 90 (1978). The Tenth Circuit considers the following factors in determining whether a defendant has made an adequate showing that the need for a co-defendant's testimony requires severance: (1) the likelihood a co-defendant would testify; (2) the significance of the testimony; (3) the exculpatory nature of the testimony; (4) the likelihood that the testimony would be impeached; (5) the prejudice caused by the lack of the testimony; (6) the effect of a severance on judicial administration and economy; and (7) the timeliness of the motion. *Scott,* 37 F.3d at 1579.

■ Mere recitation that a co-defendant will testify at a severed trial is insufficient to justify severance. See *United States v. Espinosa,* 771 F.2d 1382, 1408 (10th Cir.), cert. denied, 474 U.S. 1023, 106 S.Ct. 579, 88 L.Ed.2d 561 (1985). Even an affidavit from the co-defendant who proposes to testify is insufficient if it does not contravene his penal interest, as such an affidavit lacks credibility. See *United States v. De Simone,* 660 F.2d 532, 539–40 (5th Cir.1981), cert. denied, 455 U.S. 1027, 102 S.Ct. 1732, 72 L.Ed.2d 149 (1982).

The court finds that none of the defendants has made a sufficient showing under the *Scott* factors to justify severance. There has been no showing that any co-defendant would testify at a severed trial and would waive his fifth amendment privilege against self-incrimination. The court further finds that there is nothing remarkable or extraordinary about this particular conspiracy that requires severance. The attorneys have informed the court that there is no *Bruton* problem in this case. The court concludes that the interests of judicial economy outweigh the allegations of potential prejudice. Therefore, defendants' motions to sever are denied.

■ The court observes that the two female defendants in this case are pregnant, and both have delivery dates very close to the time of trial. The court finds that, as to these two defendants, their cases will be severed, if necessary, for medical reasons. Such determination will be made at a later time, and upon the proper medical documentation. The main case, however, will proceed to trial on November 3, 1997, as scheduled.

### Motion for Handwriting Exemplars.

The government has filed a motion for an order directing the defendants Eloina Torres, Blanca Alicia Sandoval, Jose Gomez, and Juan Gomez to provide handwriting exemplars to the government. The government asserts that it has recovered certain documents from these defendants' residences, which the government believes to be records pertaining to drug trafficking. The government contends that an analysis and comparison of the handwriting on the documents to handwriting exemplars of the defendants will provide further evidence as to the identities of the persons who made the writings. None of the defendants has filed any opposition to the government's motion, and no objections to the motion were raised at the hearing. The court finds, for the reasons stated in the government's motion, that the motion should be and hereby is granted. The court hereby orders the defendants Eloina Torres, Blanca Alicia Sandoval, and Jose Gomez to provide handwriting exemplars to the government within ten (10) days of this order. With respect to Juan Gomez, the motion is denied as moot.

### Motion to Dismiss Indictment.

■ The defendant Eloina Torres requests the court dismiss her from the indictment on the grounds that testimonial evidence has been lost in violation of the Sixth Amendment and the Due Process Clause of the Fifth Amendment (Doc. # 179). Specifically, she claims her husband, Daniel Saucedo, was an illegal alien and deported to Mexico, and that he would have provided testimony favorable to her defense. She claims the court should dismiss her from the indictment "as a salutory safeguard against summary deportation of illegal aliens."

■ As to this motion, the court first observes that the Sixth Amendment does not grant a criminal defendant the absolute right to secure the attendance of any and all witnesses. All that is allowed is compulsory

process for obtaining witnesses in her favor. *United States v. Valenzuela–Bernal,* 458 U.S. 858, 102 S.Ct. 3440, 73 L.Ed.2d 1193 (1982). Moreover, "[s]anctions may be imposed on the Government for deporting witnesses only if the criminal defendant makes a plausible showing that the testimony of the deported witnesses would have been material and favorable to the defense, in ways not merely cumulative to the testimony of available witnesses."*Id.* at 873, 102 S.Ct. at 3449. Sanctions are warranted for deportation of alien witnesses only if there is a reasonable likelihood that the testimony could have affected the judgment of the trier of fact.*Id.* at 873–74, 102 S.Ct. at 3449–50.

The court has reviewed the affidavit of defendant, and finds the statements contained therein regarding the likely testimony of her husband are conclusory and lacking in specificity. Defendant has not presented sufficient evidence upon which the court could determine whether Saucedo's testimony would meet any of the three criteria, to wit, that the testimony would be favorable, material, and non-cumulative. At the hearing, defense counsel conceded there is no evidence that Saucedo was deported in contemplation of his wife's prosecution, to deprive her of his testimony. Defense counsel very specifically stated there was no evidence of any bad faith between the Immigration and Naturalization Service and the United States Attorney's Office. The two cases relied upon by defendant, *United States v. Valenzuela–Bernal* and *United States v. Morales–Quinones,* 812 F.2d 604 (10th Cir. 1987), are distinguishable, as they involved the deportation of illegal aliens smuggled across the border, where the aliens deported were material witnesses to the crime of alien smuggling. Such is not the situation here. Certainly, an adequate showing has not been made at this time to warrant the drastic sanction of dismissal. We thus overrule this motion, based on the present showing.

### Motions to Join in Co–Defendants' Motions.

Defendants Blanca Alicia Sandoval, Oscar Torres, Abel Longoria, and Jose Gomez all seek an order permitting them to join in the motions of the other defendants (Docs # # 148, 160, 172, and 177, respectively). To the extent a particular defendant has stand-ing with respect to the motions filed by the other defendants, the court finds that these defendants may join in the other defendants' motions, and are bound by the court's present rulings thereon.

### Motion to Disclose Criminal Record and Inducements.

Defendant Castaneda has also filed a motion requesting the government disclose to him the prior criminal record of Rickie Hobbs, and any inducements, monetary and otherwise, the government has agreed to in exchange for his testimony. The court finds, for the reasons well-stated in Castaneda's motion, that the motion should be granted. The government is directed to provide to the defendant copies of Rickie Hobbs' FBI rap sheet and a letter disclosing the inducements offered for his trial testimony.

Trial is set to begin Monday, November 3, 1997, at 10:00 a.m.

IT IS THEREFORE ORDERED that the Motion of defendant Eloina Torres to exceed maximum fees and for interim vouchers (Doc. # 178) is deferred at this time;

IT IS FURTHER ORDERED that the Motion of Juan Gomez to exceed maximum statutory fees (Doc. # 158) is denied as moot;

IT IS FURTHER ORDERED that the Motion of defendant Jose Gomez to suppress (Doc. # 176) is denied;

IT IS FURTHER ORDERED that the Motion of Juan Gomez to suppress (Doc. # 180) is denied as moot;

IT IS FURTHER ORDERED that the Motion of defendant Abel Longoria to suppress evidence (Doc. # 173) is deferred with respect to defendant's argument that the recordings should be suppressed because the informant was not present; the portion of the motion based on the argument that the recordings should be suppressed because the conversations were in Spanish is denied;

IT IS FURTHER ORDERED that the Motion of defendant Alfredo Torres to suppress a letter illegally seized from the defendants (Doc. # 174) is denied as moot;

IT IS FURTHER ORDERED that the Motion of defendant Erasmo Castaneda to suppress evidence (Doc. # 145) is denied;

IT IS FURTHER ORDERED that the Motion of defendant Jose Gomez to sever (Doc. # 170) is denied;

IT IS FURTHER ORDERED that the Motion of defendant Jose Torres to sever (Doc. # 175) is denied;

IT IS FURTHER ORDERED that the Motion of defendant Eloina Torres to sever her case for a trial separate from that of her co-defendants (Doc. # 155) is denied;

IT IS FURTHER ORDERED that the Motion of defendant Alfredo Torres to sever his charges for a separate trial from those of the other defendants (Doc. # 157) is denied;

IT IS FURTHER ORDERED that the Motion of defendant Blanca Alicia Sandoval to sever (Doc. # 147) is denied;

IT IS FURTHER ORDERED that the Government's Motion for handwriting exemplars (Doc. # 171) is granted as to defendants Eloina Torres, Blanca Alicia Sandoval and Jose Gomez; and denied as moot as to defendant Juan Gomez;

IT IS FURTHER ORDERED that the Government's Motion to amend motion for handwriting exemplars (Doc. # 207) is granted;

IT IS FURTHER ORDERED that the Motion of defendant Eloina Torres to dismiss Indictment for loss of testimonial evidence (Doc. # 179) is denied;

IT IS FURTHER ORDERED that the Motions of defendants Blanca Alicia Sandoval, Oscar Torres, Abel Longoria, and Jose Gomez to join in motions (Docs. # # 148, 160, 172, and 177, respectively) are granted to the extent a particular defendant has standing with respect to the motions filed by the other defendants; and

IT IS FURTHER ORDERED that the Motion of defendant Erasmo Castaneda to disclose criminal record and inducements (Doc. 1210) is granted.