**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**AUG 28 1998**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

JEFFREY LYNN BARNES,

    Defendant - Appellant.

No. 97-6290

(D.C. No. 96-CR-189)

(W.D. Okla.)

---

**ORDER AND JUDGMENT**[*]

---

Before **ANDERSON**, **McKAY**, and **BRISCOE**, Circuit Judges.

---

Defendant, Mr. Jeffrey Lynn Barnes, appeals from a final order of the

United States District Court for the Western District of Oklahoma sentencing him

to confinement for participating in a conspiracy to distribute methamphetamine in

violation of 21 U.S.C. § 846 and for possessing with intent to distribute

methamphetamine in violation of 21 U.S.C. § 841(a)(1). We assume jurisdiction

to review this appeal pursuant to 28 U.S.C. § 1291.

Defendant asserts that the district court erred in denying his Motion to

---

[*]This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel. The court
generally disfavors the citation of orders and judgments; nevertheless, an order
and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

Suppress and admitting the disputed articles into evidence. After conducting an evidentiary hearing on Defendant's Motion to Suppress, the district judge issued an order denying the motion, but made no factual findings. When reviewing the denial of a motion to suppress, we view the evidence in the light most favorable to the government. See United States v. Villa-Chaparro, 115 F.3d 797, 800-01 (10th Cir.), cert. denied, ___ U.S. ___ , 118 S. Ct. 326 (1997); United States v. Anderson, 114 F.3d 1059, 1063 (10th Cir. 1997). If the district court makes no findings in resolving a motion to suppress, the appellate court "must uphold the ruling if there is any reasonable view of the evidence to support it." United States v. Donnes, 947 F.2d. 1430, 1432 (10th Cir. 1991) (internal quotations omitted). The reasonableness of a search and seizure under the Fourth Amendment is a question of law that we review *de novo*. See United States v. McCarty, 82 F.3d 943, 947 (10th Cir.), cert. denied, ___ U.S. ___ , 117 S. Ct. 257 (1996).

Defendant was a passenger in a car stopped for a speeding violation. Trooper T.G. Byrns requested the driver's license and rental car papers and asked the driver to come to the patrol vehicle while the officer wrote the driver a warning. While writing the warning in the patrol vehicle, the officer noticed that the driver's hands were shaking and that he was humming and singing while the officer asked him questions. Because "the singing was very much more unusual than what [he was] normally used to seeing," R., Vol. II at 10-11, the officer

-2-

asked for, and received permission from, the driver to run a drug-detecting dog around the car. Trooper Byrns stated that if he had completed writing the warning notice before the other trooper arrived with the dog, he would have let the driver go on his way. See id. at 17-18. However, Trooper Mike Keeton arrived within minutes with his dog.

Trooper Byrns stopped writing the warning and gave Trooper Keeton a brief summary of the situation. He then returned to his vehicle to continue writing the warning. When Trooper Keeton noticed Defendant in the vehicle, he asked Defendant to step out of the vehicle. As Defendant looked through his wallet to find his identification per the trooper's request, Trooper Keeton noticed that the wallet contained a large amount of money. After Defendant failed to produce any official identification, Trooper Keeton asked him to stand against a fence paralleling the highway.

Meanwhile, Trooper Byrns had again stopped writing the driver's warning and was present when Defendant was asked to stand by the fence. Trooper Keeton ran the dog around the car twice, and each time it alerted on the passenger side by barking and scratching. After the dog alerted twice on the same location, Trooper Keeton opened the door and put the dog inside the car. The dog alerted by pawing on the front passenger seat and on the back seat. Trooper Byrns then went to the front passenger seat and found a small tube containing

methamphetamine.  When that vial was discovered, Defendant and the driver were arrested.  They were handcuffed and left on the ground while the troopers continued their search.  After pulling out the back seat of the vehicle, the troopers found electronic scales and a larger quantity of methamphetamine.  The troopers called a wrecker to tow the vehicle.

Defendant claims that since the duration of his investigative detention lasted longer than the average time to conduct a traffic stop and issue a warning notice, the drugs were discovered as a result of an unlawful seizure and should have been suppressed.  He also claims that the scope of his investigative detention constituted an unlawful seizure of his person.

There is no controversy over whether the stop was initially valid for Fourth Amendment purposes.  See United States v. Botero-Ospina, 71 F.3d 783, 787 (10th Cir. 1995), cert. denied, 518 U.S. 1007 (1996).  Trooper Byrns could detain the vehicle and its occupants for as long as it took him to inspect the driver's license and vehicle registration, run the necessary computer checks, and issue the warning for speeding.  See United States v. Martinez, 983 F.2d 968, 974 (10th Cir. 1992), cert. denied, 508 U.S. 922 (1993).  According to the troopers, it takes, on average, five to seven minutes to complete a traffic stop in which a warning notice is issued, but sometimes it takes longer.  See R., Vol. II at 19, 20, 24.

Reviewing the evidence in the light most favorable to the government, the

-4-

length of the detention was "carefully tailored to its underlying justification" and "last[ed] no longer than [was] necessary to effectuate the purpose of the stop." Florida v. Royer, 460 U.S. 491, 500 (1983). The drug dog alerted on the vehicle before Trooper Byrns completed writing the warning notice and within a reasonable amount of time necessary to effectuate the purpose of the stop. Under the appropriate standard of review and based on the troopers' testimony, we adopt the reasonable view of the evidence that the drugs were found within seven to ten minutes after the car was first stopped. See R., Vol. II at 12, 24, 47, 69-70.

Defendant directs our attention to the twenty-eight-minute time interval between the stop of the car and the call to the wrecker to tow the car. We do not inquire into the reasonableness of that time period. The length of detention that we are concerned with is the time from the stop of the car until the first discovery of methamphetamine. After that discovery, Defendant and the driver were taken into custody and advised of their rights. The twenty-eight minute interval between the initial contact and the calling of the wrecker does not conflict with the troopers' time estimate of the detention until the first methamphetamine discovery.

Defendant complains of other factors relevant to the scope of his detention, arguing that they resulted in an unlawful seizure of his person. He says that Trooper Keeton did five things that resulted in an unlawful detention and search:

(1) physically detained Defendant; (2) ordered Defendant out of the vehicle; (3) ordered Defendant to produce identification; (4) viewed the contents of Defendant's wallet; and (5) ordered Defendant to stand by the fence along the highway. We hold that Trooper Keeton's conduct did not result in an unlawful seizure of Defendant. In Maryland v. Wilson, the Supreme Court ruled that an officer making a traffic stop may order a passenger out of the car pending completion of the stop, reasoning that safety concerns for the officer outweighed the personal liberty interests of the passenger. See Maryland v. Wilson, 519 U.S. 408, 117 S. Ct. 882, 884-86 (1997). Defendant, a passenger, was detained properly as a result of a traffic stop, and the Supreme Court has specifically sanctioned an officer's removal of a passenger from the car, see id. at 884, and an officer's request that he produce identification. See Royer, 460 U.S. at 501. It was also appropriate for Trooper Keeton to direct Defendant to stand a safe distance away based on reasonable concerns for the officers' safety, Defendant's safety, and minimizing distraction of the dog during the sniff.

Focusing on "'the touchstone of our analysis under the Fourth Amendment,'" the reasonableness of the intrusion into a citizen's personal security, Wilson, 117 S. Ct. at 884 (quoting Pennsylvania v. Mimms, 434 U.S. 106, 108 (1977)), the duration and scope of Defendant's detention were constitutionally permissible. As we explained in United States v. Melendez-

Garcia:

> There is no bright-line rule to determine whether the scope of police conduct was reasonably related to the goals of the stop; "rather our evaluation is guided by 'common sense and ordinary human experience.'" We must avoid "unrealistic second-guessing" of police officers' decisions in this regard and thus do not require them to use the least intrusive means in the course of a detention, only reasonable ones.

Melendez-Garcia, 28 F.3d 1046, 1052 (10th Cir. 1994) (internal citations omitted). We are not persuaded by Defendant's contentions regarding his detention; each step taken by the troopers was reasonable and was guided by common sense and ordinary human experience.

We therefore hold that Defendant's Motion to Suppress Evidence was properly overruled because the traffic stop for a speeding violation was justified at its inception and the detention which followed was lawful. Judgment AFFIRMED.

Entered for the Court


Monroe G. McKay
Circuit Judge

No. 97-6290, <u>United States v. Jeffrey Lynn Barnes</u>

**ANDERSON**, Circuit Judge, concurring:

I concur in Judge McKay's analysis and conclusion that the stop and detention which followed were lawful, and with this concurrence I regard Judge McKay's opinion as the majority view in this case.

That concurrence obviously rests upon the assumption that the Fourth Amendment was implicated by the continued detention and search, a question which need not be reached if, as Judge Briscoe points out in her separate concurrence, the defendant consented to the search. I write separately simply for the purpose of stating that I do not disagree with Judge Briscoe's analysis of the consent doctrine, and that I join her concurrence as an alternative holding in this case. I do so fully realizing that this is an unusual position to take, but it is not particularly exotic to approve of alternative grounds upon which the district court can be affirmed in a case.

No. 97-6290, United States v. Jeffrey Lynn Barnes

**BRISCOE**, Circuit Judge, concurring:

I concur in the affirmance of the district court's denial of the motion to suppress, but rely on Sullivan's consent to conclude the officers lawfully detained Barnes.

We consider the entire record when we review the district court's denial of a motion to suppress. United States v. Muniz, 1 F.3d 1018, 1021 (10th Cir. 1993). This includes evidence admitted during the suppression hearing as well as at trial. Id. In his trial testimony, Sullivan testified he consented to a drug detection dog inspecting his car and he described the chronology of events preceding his consent as well as the events following his consent. By my reading of the record, Sullivan consented to the dog inspection within the first two or three minutes of the stop, clearly within the duration of a proper traffic stop. Because the traffic stop was not unlawful at that point, Sullivan was lawfully detained when he gave his consent. Further, there is no evidence in the record before us from which we could conclude Sullivan's consent was involuntary.

Notwithstanding United States v. Lee, 73 F.3d 1034 (10th Cir. 1996), the consent is not invalid simply because the driver was detained at the time the consent was given. See also United States v. Burch, 1998 WL _____ *8 (No. 97-3208 filed August 25, 1998). A detained person can give valid consent. United States v. Watson, 423 U.S. 411, 424 (1976); United States v. Doyle, 129

F.3d 1372, 1377 (10th Cir. 1997); United States v. Flores, 48 F.3d 467, 469 (10th Cir. 1995); United States v. Sanchez-Valderuten, 11 F.3d 985, 990 (10th Cir. 1993).  In Lee, the driver, during a traffic stop, gave consent to a search of his car while the officer was still holding his license.  The court stated because the officer held the driver's license, the passenger's identification, and the rental documents for the car when he asked for consent to search, the "request to search the car was not a consensual encounter because the Defendants 'would not reasonably have felt free to leave or otherwise terminate the encounter' with Deputy Barney because their documents had not been returned."  73 F.3d at 1040.  This analysis confuses the question of whether a police-citizen encounter is consensual or a detention with the question of the voluntariness of a consent to search.  To the extent Lee holds the mere fact of detention invalidates consent by the detained person, it appears contrary to Supreme Court precedent.  In Watson, the Supreme Court stated "the fact of custody alone has never been enough in itself to demonstrate a coerced confession or consent to search."  423 U.S. at 424.  It is also contrary to circuit precedent both before and after Lee.

When a driver voluntarily consents to additional questioning by an officer or the use of a drug detection dog, there is no seizure and "hence the Fourth Amendment's strictures are not implicated."  United States v. Sandoval, 29 F.3d 537, 540 (10th Cir. 1994).  Therefore the eighteen-minute detention about which

-2-

Barnes complains did not violate the Fourth Amendment.