**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**MAR 3 1999**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

    Plaintiff-Appellee,

v.

LONNIE ALUMBAUGH,

    Defendant-Appellant.

No. 97-5236
(D.C. No. 97-CR-45-B)
(Northern District of Oklahoma)

**ORDER AND JUDGMENT**[*]

Before **KELLY**, **HOLLOWAY** and **BRISCOE**, Circuit Judges,

Defendant Lonnie Alumbaugh was convicted on a jury guilty verdict of possession of a firearm after previous conviction of a felony in violation of 18 U.S.C. § 922(g)(1) and was sentenced to thirty-six months' imprisonment, three years of supervised release, a fine of $2,000.00 and a special monetary assessment of $100.00. I App. (Doc. 33). Defendant appeals his conviction and sentence, I App. (Doc. 34), claiming that the district court improperly denied his motion to suppress evidence and improperly added four levels to his base offense level. We exercise jurisdiction pursuant to 28 U.S.C. § 1291 and affirm.

---

[*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under terms and conditions of 10th Cir. R. 36.3.

# I

## A

### The Search of Defendant's Vehicle

The trial judge made essentially the following findings and conclusions. They followed the suppression hearing held on May 23, 1997. I App. Doc. 14.

On March 11, 1996 about 10:45 a.m. Oklahoma Highway Patrol Trooper Smith was working an aircraft assignment with Trooper Perry and Pilot Trooper Stafford. They were on Highway 69. Stafford radioed Smith he had clocked a vehicle at 80 m.p.h. Smith stopped the vehicle for speeding. Defendant was the driver. Id. at 2.

Trooper Perry had stopped another vehicle for speeding and defendant parked his vehicle behind the other vehicle. For safety reasons Trooper Smith ordered defendant to exit and step to the rear of his vehicle and asked for his driver's license. Smith asked defendant, who looked familiar, if he had been incarcerated. Smith had worked for the Department of Corrections at Jim Dunn Correctional Facility in Taft, Oklahoma. Defendant denied he had been in the penitentiary. Id. at 2. Smith asked where defendant was coming from and defendant said he had been returning from Muskogee.

While waiting to determine the validity of the Defendant's driver's license, Smith approached Odum and asked her where she and the Defendant had been. Id. at 3. Odum replied that they had gone to Muskogee, Oklahoma to make a phone call. Id. Trooper Smith thought it was strange that the Defendant and Odum traveled to Muskogee,

Oklahoma, to make a phone call when the Defendant's driver license stated that the Defendant's address was in Claremore, Oklahoma. Smith repeated to Defendant his question where he and Odum had been coming from. Id. The Defendant then stated that he and Odum had driven to the Muskogee Correctional Center to visit the Defendant's brother. Id. Smith believed that the statements of the Defendant and Odum were conflicting. Id.

During the conversation, Trooper Smith observed that Defendant appeared to be extremely nervous as exhibited by sweating and continually putting his hands in and out of his pockets. Id. Smith also observed the Defendant and Odum to appear very thin and exhibiting poor hygiene, conditions he believed were consistent with users of methamphetamine. Id. Smith further observed that Odum had a sunken face, appeared very fidgety and she was ordered by Smith to keep her head in the Defendant's car. Id. at 3.

The Defendant's driver's license was determined to be valid. Id. Smith then asked the Defendant if the Defendant was carrying something illegal in the Defendant's car. Defendant denied carrying anything illegal. Id. Smith asked if he would mind if Smith looked in Defendant's car. The Defendant answered in a raised voice that Trooper Smith could not search the car. Id. at 3-4. Officer Perry, who had finished his traffic stop, came over to the Defendant's car to assist Smith. Smith handed Defendant's driver's license to Perry to run a NCIC check and to call the local canine unit. Id. at 4. The NCIC check

revealed the Defendant had twice been incarcerated.  Id.  Trooper Smith asked the Defendant why the Defendant had denied ever being incarcerated.  The Defendant replied that he thought Smith was inquiring about recent incarcerations.  Id.  Trooper Smith issued a traffic citation to the Defendant, handed the Defendant his driver's license and ordered the Defendant to pull the Defendant's car further over on the shoulder.  Id.

Two canine units arrived at the scene.  The first unit conducted a "canine sniff" of the exterior of the car.  The dog "Kilo" alerted to the presence of a controlled substance.  Id.  The second canine unit conducted a "canine sniff" of the exterior of the car and the dog "Buck" alerted also.  Id.  Believing the dogs had not alerted, defendant and Odum jumped up and down exclaiming "Jesus, thank you, thank you, Jesus."  Id.

Based on both dogs' reactions, Trooper Smith searched the Defendant's car.  The search revealed drug paraphernalia, marijuana, suspected methamphetamine, photographs taken at Defendant's address purporting to depict drug activity and receipts for chemicals used in the manufacture of drugs.  Id. at 4-5.

**B**

**The Search of Defendant's Home**

After the vehicle search, Trooper Smith notified law enforcement in Rogers County, Oklahoma, of the evidence seized in Defendant's vehicle.  Id. at 5.  Based upon prior information regarding the Defendant and the evidence seized from the car, Officer Wayne Stinnett requested a search warrant from a Rogers County district judge to search

4

the Defendant's home. Stinnett prepared an affidavit. Id. at 5. At the hearing before the judge, Smith offered testimony in support of the search warrant. Id. The judge then issued the warrant. Id.

A search was conducted at Defendant's home. Id. The search uncovered a Jennings .22 L. semi-automatic pistol containing 6 rounds. V App. at 7-8. The firearm was located in Defendant's bedroom lying on the bed. V App. at 16.[1]

## C

## The Trial Judge's Rulings

The judge rejected defendant's assertion that Oklahoma law applies as to the validity of the search and followed federal precedent. Id. at 5. The judge held that an investigative detention was involved here, citing Berkemer v. McCarty, 468 U.S. 420 (1984). The judge found there is no contention here that there was a consensual encounter, nor was there any assertion that the detention only lasted as long as necessary to issue the citation and warning. Id. at 7. It was noted that after Trooper Smith issued the citation and returned defendant's license, Smith ordered defendant to move his car further off the road and to stay in his car while a canine unit was called. The additional questioning of defendant and investigative detention were justified only if supported by an objectively reasonable suspicion of illegal activity, United States v. Jones, 44 F.3d 860, 872 (10th Cir. 1995).

---

[1] The location of the gun within the house was noted during the jury trial.

The judge found the additional questioning and investigative detention were supported by reasonable suspicion of illegal activity. Defendant's and Ms. Odum's conflicting explanations of their activities; their appearances consistent with those of users of methamphetamine; Trooper Smith's belief that he had seen defendant at the penitentiary, but which defendant denied; defendant's extreme nervousness (not here relied on alone to justify further detention) - the totality of all these factors made the actions of the officers legitimate because of reasonable suspicion. Id. at 8-9.

The search of the vehicle was found not to be in violation of the Fourth Amendment. A warrantless search is permitted where "there is probable cause to believe that the vehicle contains contraband or other evidence which is subject to seizure under the law." California v. Casey, 471 U.S. 386, 394 (1985). And here the dogs alerted. Even without such justifications, the judge held that there were good faith actions by the officers within United States v. Leon, 468 U.S. 897 (1984). Accordingly, the motion to suppress was denied. Id. at 10.

**II**

**A**

**Motion to Suppress the Evidence Seized by Trooper Smith and Officer Stinnett**

6

Defendant contends that the district court erred in denying his motion to suppress the evidence seized by Trooper Smith because Trooper Smith lacked articulate reasonable suspicion to detain Defendant after issuing him his traffic citation. Defendant further contends that because the evidence seized by Smith formed the probable cause necessary to issue a search warrant to search Defendant's residence, the search warrant was tainted and the district court should have suppressed the evidence seized from Defendant's home.

The government argues we should affirm the district court's ruling because Trooper Smith possessed articulate reasonable suspicion to detain Defendant in order to conduct a "canine sniff." In the alternative, the government says that if Smith did not possess the requisite articulate reasonable suspicion to detain Defendant, then the search of the Defendant's residence was still valid because Officer Stinnett relied in good faith on what he believed to be a valid search warrant to execute the search of Defendant's residence. United States v. Leon, 468 U.S. 897, 922 (1984).

The facts surrounding the Motion to Suppress are not in dispute. Therefore, we review *de novo* only the district judge's legal conclusion that Trooper Smith possessed articulate reasonable suspicion to detain defendant. See United States v. Salzano, 149 F.3d 1238, 1241 (10th Cir. 1998). We affirm on the ground that Trooper Smith possessed articulate reasonable suspicion to detain Defendant in order to conduct a "canine sniff." We therefore do not decide whether the Leon good faith exception applies here.

A routine traffic stop is a seizure within the meaning of the Fourth Amendment but

7

the stop is characterized as an investigative detention rather than a custodial arrest. United States v. Wood, 106 F.3d 942, 945 (10th Cir. 1997). The reasonableness of such an investigative detention is governed by the principles of Terry v. Ohio, 392 U.S. 1, 19-20 (1968). There are two parts to the Terry inquiry. First, was the traffic stop justified at its inception? Wood, 106 F.3d at 945. Defendant appears not to dispute that Trooper Smith was justified in pulling over Defendant because the Defendant had been speeding. Second, the court must determine whether "the officer's actions during the detention were reasonably related in scope to the circumstances which justified the interference in the first place." Wood, 106 F.3d at 945; United States v. Lee, 73 F.3d 1034, 1038 (10th Cir. 1996).

An investigative detention "must be temporary, lasting no longer than necessary to effectuate the purpose of the stop, and the scope of the detention must be carefully tailored to its underlying justification." Wood, 106 F.3d at 945. An officer may detain a driver and the driver's vehicle as long as reasonably necessary to "review the driver's license and registration, run a computer check, determine that the driver is authorized to operate the vehicle, and issue the detainee a citation." Salzano, 149 F.3d at 1241.

Trooper Smith detained Defendant beyond the scope generally allowed for an investigative detention when Smith, after issuing a traffic citation to Defendant, ordered Defendant to move his car further on to the road shoulder and await a canine unit. Lee, 73 F.3d at 1039.

8

Such an expanded detention is permissible if Defendant consented, United States v. McKneely, 6 F.3d 1447, 1450 (10th Cir. 1993), or if Trooper Smith possessed a "particularized and objective basis for suspecting the particular person stopped on criminal activity." United States v. Lambert, 46 F.3d 1064, 1069 (10th Cir. 1995). The government concedes that Defendant did not consent to the expanded detention. Therefore, the detention is valid only if Trooper Smith possessed articulate reasonable suspicion at the time he ordered Defendant to await the canine sniff.

The government bears the burden to show that an officer possessed articulate reasonable suspicion. United States v. Carhee, 27 F.3d 1493, 1496 and n.2 (10th Cir. 1994). Police officers cannot rely upon an "unparticularized suspicion or hunch." Brown v. Texas, 443 U.S. 47, 52 n.2 (1979); United States v. Fernandez, 18 F.3d 874, 878 (10th Cir. 1994). Whether an officer possessed the requisite articulate suspicion depends on the totality of the circumstances. Salvano, 149 F.3d at 1242. We do not examine any factors in complete isolation.

The government contends that the following facts formed the basis of the officer's articulate reasonable suspicion: (1) Odum's statement that she and Defendant traveled to Muskogee to make a phone call was suspicious and conflicted with Defendant's statement that they had traveled to Muskogee to visit his brother; (2) Defendant and Odum appeared extremely nervous; (3) Defendant and Odum appeared unkempt and had poor hygiene, characteristics consistent with methamphetamine users; (4) Defendant lied to Trooper

9

Smith by denying he had ever been incarcerated; (5) Defendant did not consent to the search request and responded to Trooper Smith in a loud voice. All of these facts occurred prior to Trooper Smith ordering Defendant to await the canine units' arrival.[1]

Initially, we note that Trooper Smith cannot form articulate reasonable suspicion on the basis that Defendant denied consent to a search. Wood, 106 F.3d at 946 (failure to consent cannot form any "part of the basis for reasonable suspicion."). However, based upon the totality of the circumstances, we agree that Trooper Smith possessed articulate reasonable suspicion that Defendant was engaged in criminal activity so as to be able to detain him longer than a Terry stop generally allows. Odum's statement conflicted with Defendant's statement. Odum said their trip's purpose was to make a phone call. Defendant said the trip's purpose was to visit his incarcerated brother. Defendant also made an untrue statement when he denied that he had been incarcerated. We do not find Defendant's argument that he merely thought Trooper Smith was asking about recent incarcerations to be persuasive. Conflicting statements can give rise to articulate reasonable suspicion. United States v. Koop, 45 F.3d 1450, 1454 (10th Cir. 1995).

Defendant's and Odum's nervousness also supported Trooper Smith's articulate

---

[1] We do not consider facts that occurred after the "canine sniff" relevant to determine whether Trooper Smith possessed articulate reasonable suspicion to detain Defendant. See Lambert, 46 F.3d at 1071 (any suspicion aroused after illegal detention cannot be used to assess whether agents had reasonable suspicion to detain in the first place). Therefore, we do not consider the fact that Defendant and Odum "jumped for joy" (when they apparently believed the dogs had not alerted to the presence of controlled substances) after the "canine sniff".

reasonable suspicion. We have consistently held that the nervousness a person would normally exhibit during a traffic stop is given little, if any, weight to support articulate reasonable suspicion. Salvano, 149 F.3d at 1244. However, an officer may have articulate reasonable suspicion when the defendant appears extremely nervous. Id.; see also United States v. Turner, 928 F.2d 956, 959 (10th Cir. 1991), cert. denied, 502 U.S. 881 (1991)(nervousness combined with other suspicious circumstances may justify detention). Here, Defendant exhibited extreme nervousness by continuous pacing, sweating, and moving his hands in and out his pockets. Compare Salvano, 149 F.3d at 1244 (despite a lengthy interaction, defendant's only sign of nervousness was a shaking of the hands as he handed rental papers to the police officer). Odum was extremely agitated. She raised herself through the car window numerous times to ask Trooper Smith what was happening. At one point, Trooper Smith had to order her back into Defendant's car.

The government has met its burden to show that Trooper Smith possessed articulate reasonable suspicion to detain Defendant in order to conduct a "canine sniff." Once both dogs alerted to the presence of a controlled substance, Trooper Smith had sufficient probable cause to conduct a warrantless search of Defendant's automobile. United States v. Ludwig, 10 F.3d 1523, 1527-28 (10th Cir. 1994). The evidence that was validly seized from Defendant's car, including methamphetamine and pictures of drug-production at a residence, was sufficient to support a finding of probable cause to issue a

search warrant for Defendant's residence.  Upon execution of the search warrant, Officer Stinnett permissibly seized Defendant's loaded firearm found on Defendant's bed. Defendant offers nothing beside the argument we have rejected above that would show the firearm seized from his residence was seized in violation of the Fourth Amendment. Therefore, we affirm the district court's denial of Defendant's motion to suppress evidence.

**B**

**The addition of four points to Defendant's base offense level**

Defendant was indicted on April 2, 1997 by a federal grand jury in the Northern District of Oklahoma for possession of a firearm after a former felony conviction.  A jury trial was held and Defendant was convicted on July 22, 1997.  The district court held a sentencing hearing.  A pre-sentence report was prepared by Defendant's probation officer.  The government objected to the sentence recommendation in the pre-sentence report because the report failed to add four points to the offense level.  I App. (Doc. 31). The government maintained that four points should have been added because the firearm was possessed for use in another crime - cooking methamphetamine - pursuant to USSG 2K2.1(b)(5).  The probation officer had rejected adding the four points in his pre-sentence report.  II App. at 2.

The district court agreed with the government and held that the four points would be added to the offensive level.  The judge made specific oral findings based on his

12

review of the trial transcript, stating that "by a preponderance of the evidence that this .22 caliber pistol . . . was purchased by Mr. Alumbaugh, was in the possession of Mr. Alumbaugh, and it was purchased for purposes of the drug business, which would certainly would be a firearm purchased in connection with another felony offense." VII App. at 30-31.

We review a district court's factual findings in connection with sentencing for clear error. United States v. Farnsworth, 92 F.3d 1001, 1009 (10th Cir. 1996); cert. denied, 117 S. Ct. 596 (1996); United States v. Roederer, 11 F.3d 973, 977 (10th Cir. 1993)("We review factual findings purporting to support a district court's base offense level calculations under the clearly erroneous standard."). We affirm.

The Sentencing Guidelines allow for a four point increase to a base offense level if a firearm is used or possessed in connection with a felony drug offense. U.S.S.G. § 2k2.1(b)(5). The phrase "in connection with" means that a nexus exists between the firearm and the drug manufacture or drug dealing business. Physical proximity between the drugs and the firearm supports an inference of a nexus between the firearm and the drug activity. United States v. Gomez-Arrellano, 5 F.3d 464, 466 (10th Cir. 1993). A nexus does not exist if the facts show that the weapon's possession is coincidental or entirely unrelated to other felony offenses. Id. The government carries the burden to show that a weapon was possessed in physical proximity to the drug offense. United States v. Contreras, 59 F.3d 1038, 1040 (10th Cir. 1995). Once the government meets its

13

burden, the defendant carries the burden to show that it was clearly improbable that the gun was connected to the offense. Id.

Here, the government met its burden to show that the firearm was used or possessed in physical proximity to the drug offense. The record indicates that Defendant purchased the gun for Odum's protection during their drug dealing. VII App. at 30-31; IV App. at 41-42; VI App. at 66-67. The gun was found in the same residence where police officers discovered items used in the manufacturing of methamphetamine. V App. at 30. These facts sustain the government's burden to show that the firearm was used or possessed "in connection" with methamphetamine manufacturing and distribution. See Contreras, 59 F.3d at 1040 (gun found in house twenty-five feet from attached garage containing 238 pounds of marijuana held to be "in connection with" the drug offense).

Defendant's sole argument is that the district court should have adopted the probation officer's recommendation in his pre-sentence report not to add four points. However, the district court itself may make an enhancement based on specific factual findings. United States v. Wacker, 72 F.3d 1453, 1476 (10th Cir. 1995). The district court made its specific findings during the sentencing hearing. VII App. at 30-31. We do not see how the district court clearly erred in its determination to add four points to Defendant's base offense level.

The judgment of the district court is AFFIRMED.

Entered for the Court

William J. Holloway Jr.
Circuit Judge