**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**JUN 12 2001**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

     Plaintiff-Appellee,

v.

JAMES D. MORSE, JR.,

     Defendant-Appellant.

No. 00-3205

(D.C. No. 99-CR-10141-JTM)
(D. Kan.)

**ORDER AND JUDGMENT**[*]

Before **HENRY, BALDOCK,** and **BRISCOE**, Circuit Judges.

James D. Morse, Jr., appeals the denial of his motion to suppress evidence

obtained as a result of a traffic stop and search of his vehicle. We affirm.

I.

On September 23, 1999, Morse's pickup was stopped after Kansas Highway

Patrol Troopers John D. Rule and Richard Jimerson observed the pickup drift onto the

shoulder of the highway twice within a quarter of a mile. It was mid-afternoon, the

pavement was dry, and there were no weather or traffic conditions apparent to cause

---

[*] This order and judgment is not binding precedent, except under the doctrines of
law of the case, res judicata, and collateral estoppel. The court generally disfavors the
citation of orders and judgments; nevertheless, an order and judgment may be cited under
the terms and conditions of 10th Cir. R. 36.3.

the pickup to drift.  As Rule approached Morse's pickup, he detected the odor of fresh paint.  Rule asked Morse if he was sleepy, and Morse responded, "Yeah, a little bit." Record II at 28.  Morse explained that he was returning to Virginia after a two-day vacation in Denver.  Morse had a Virginia driver's license, a bill of sale for the pickup, and proof of insurance in the form of a letter.  The bill of sale showed that the pickup had been purchased on July 15, 1999, in Albuquerque.  It was insured by an agency in Albuquerque in the name of Anthony Pacheco, and Morse's name did not appear on the insurance letter.  Three other vehicles were also listed on the letter as insured in the name of Pacheco.  Rule checked Morse's criminal history, and it was negative.

Rule returned Morse's documents and told him to have a good trip.  Rule then immediately asked Morse if he would be willing to answer additional questions.  In response to questioning, Morse told Rule he did not have anything illegal, and he did not have any guns, drugs, or large amounts of money.  Rule asked Morse if he could search the toolbox in the back of the pickup, and Morse agreed.  Rule did not tell Morse that he was free to leave or that he did not have to consent to the search.  Rule determined that the toolbox had a false compartment.  Morse denied any knowledge of the compartment and he was arrested.  After Morse was arrested, a drug-sniffing canine was brought to the pickup, and it alerted to the toolbox.  A search of the pickup resulted in the discovery of forty pounds of marijuana in the toolbox and two kilograms of cocaine in a spare tire.

-2-

On November 5, 1999, Morse was indicted for one count of possession of cocaine with intent to distribute and one count of possession of marijuana with intent to distribute. See 21 U.S.C. § 841(a)(1). Morse filed a motion to suppress, arguing that the stop, search, and seizure of his pickup and person were illegal. Following a hearing, the district court denied the motion to suppress. Morse entered a conditional plea of guilty and was sentenced to two concurrent terms of sixty months.

## II.

In reviewing the district court's denial of a motion to suppress, we consider the totality of the circumstances and view the evidence in the light most favorable to the government. United States v. Long, 176 F.3d 1304, 1307 (10th Cir.) (citations omitted), cert. denied, 528 U.S. 921 (1999). "We accept the district court's factual findings unless those findings are clearly erroneous. The credibility of witnesses, the weight to be given evidence, and the reasonable inferences drawn from the evidence fall within the province of the district court." Id. (citations omitted). "Keeping in mind that the burden is on the defendant to prove that the challenged seizure was illegal under the Fourth Amendment, the ultimate determination of reasonableness under the Fourth Amendment is a question of law reviewable de novo." Id. (citations omitted).

## III.

Morse argues that the district court should have granted his motion to suppress

because (1) the initial stop was unjustified and pretextual; (2) Rule improperly detained Morse after the traffic stop had ended; and (3) Rule lacked probable cause to arrest Morse.

## Initial Traffic Stop

"A traffic stop constitutes a seizure under the Fourth Amendment." United States v. Villa-Chaparro, 115 F.3d 797, 801 (10th Cir. 1997). "[A] traffic stop is valid under the Fourth Amendment if the stop is based on an observed traffic violation or if the police officer has reasonable articulable suspicion that a traffic or equipment violation has occurred or is occurring." United States v. Botero-Ospina, 71 F.3d 783, 787 (10th Cir. 1995) (en banc).

The government argues that the stop was justified because the officers had probable cause to believe that Morse driving his pickup onto the shoulder twice within a quarter of a mile violated Kan. Stat. Ann. § 8-1522, which provides:

> Whenever any roadway has been divided into two (2) or more clearly marked lanes for traffic, the following rules in addition to all others consistent herewith shall apply.
> (a) A vehicle shall be driven as nearly as practicable entirely within a single lane and shall not be moved from such lane until the driver has first ascertained that such movement can be made with safety.

Morse's failure to drive his pickup within his single lane created probable cause that he was in violation of section 8-1522. This court reached a similar conclusion in United States v. Ozbirn, 189 F.3d 1194, 1198 (10th Cir. 1999) (holding officer had probable

cause to stop defendant after seeing his vehicle drift onto the shoulder twice within a quarter mile under optimal road, weather, and traffic conditions).

Morse argues that the traffic stop was pretextual. However, it is irrelevant whether an officer has other subjective reasons for stopping the vehicle. Botero-Ospina, 71 F.3d at 787. "Our sole inquiry is whether this particular officer had reasonable suspicion that this particular motorist violated 'any one of the multitude of applicable traffic and equipment regulations' of the jurisdiction." Id. (quoting Del. v. Prouse, 440 U.S. 648, 661 (1979)). Rule had such reasonable suspicion.

Detention After Traffic Stop Ended

Generally a police officer's actions during a detention must be "reasonably related in scope" to the circumstances which justified the initial stop. Terry v. Ohio, 392 U.S. 1, 20 (1968). An investigative detention usually must last no longer than necessary to effectuate the purpose of the stop. United States v. Lee, 73 F.3d 1034, 1038 (10th Cir. 1996).

> An officer conducting a routine traffic stop may request a driver's license and vehicle registration, run a computer check, and issue a citation. When the driver has produced a valid license and proof that he is entitled to operate the car, he must be allowed to proceed on his way, without being subject to further delay by police for additional questioning.

United States v. McRae, 81 F.3d 1528, 1534 (10th Cir. 1996) (quoting United States v. Gonzalez-Lerma, 14 F.3d 1479, 1483 (10th Cir. 1994)).

Morse argues that Rule extended the detention beyond the length of time needed

for the traffic stop by questioning him and searching the toolbox.  The government

argues that after Rule returned Morse's documents, he engaged Morse in consensual

questioning.[1]  The government bears the burden of establishing that consent was freely

and voluntarily given.  See Schneckloth v. Bustamonte, 412 U.S. 218, 229 (1973).

Whether consent has been given is a question of fact and is determined from the

totality of all of the circumstances.  United States v. Mendenhall, 446 U.S. 544, 557

(1980).  First, the government must proffer clear and positive testimony that the

consent was unequivocal and specific, and freely and intelligently given.  United States

v. McRae, 81 F.3d 1528, 1537 (10th Cir. 1996).  Second, the government must

establish that consent was given without duress or coercion.  Id.  We must determine

whether "the police conduct would have communicated to a reasonable person that the

person was not free to decline the officers' requests or otherwise terminate the

encounter."  Fla. v. Bostick, 501 U.S. 429, 439 (1991).

To determine whether Morse's consent was unequivocal and specific, and freely

and intelligently given, we examine the facts that led to the alleged consent.  Morse's

pickup was pulled over for a legal traffic stop.  Rule questioned Morse about his

sleepiness and travel plans.  Rule examined Morse's documents, checked his criminal

history, and returned the documents to Morse.  Rule told Morse to have a good trip and

---

[1]  The government also argues that Rule was justified in detaining Morse
because Rule had reasonable suspicion of criminal activity.  Because we conclude that
Morse consented, we need not reach the reasonable suspicion issue.

then immediately asked Morse if he was willing to answer additional questions. Morse answered the additional questions. Rule asked if he could conduct a search, and Morse agreed. The first requirement is met. The testimony established that Morse's consent was unequivocal and specific. He implicitly agreed to additional questioning when he answered the additional questions. Morse verbally agreed to the search of the toolbox. There is no indication that Morse's consent was not intelligent. Morse understood what Rule asked and responded appropriately. Under the totality of the circumstances, Morse's consent was voluntarily given. Rule returned Morse's documents and told him to have a good trip, both of which suggest that Morse was free to go. Rule asked if Morse would be willing to answer more questions, implying that Morse was entitled to decline.

Rule did not explicitly tell Morse that he was free to go or that he could decline to consent to the questioning or search. See United States v. McSwain, 29 F.3d 558, 563 (10th Cir. 1994) (holding consent not voluntary in part because defendant not told he was free to go or could refuse to consent). However, an officer is not required to inform a detainee that he or she is free to leave in order to render the encounter that follows consensual. See United States v. Patten, 183 F.3d 1190, 1194 (10th Cir. 1999). The Supreme Court has noted that "[w]hile knowledge of the right to refuse consent is one factor to be taken into account, the government need not establish such knowledge as the *sine qua non* of an effective consent." Schneckloth, 412 U.S. at 227.

-7-

It would be "unrealistic to require police officers to always inform detainees that they are free to go before a consent to search may be deemed voluntary." Ohio v. Robinette, 519 U.S. 33, 39-40 (1996).

The second requirement the government must satisfy is to establish that the consent was given without duress or coercion.

> In determining whether a consent to search was free from coercion, a court should consider, inter alia, physical mistreatment, use of violence, threats, threats of violence, promises or inducements, deception or trickery, and the physical and mental condition and capacity of the defendant within the totality of the circumstances. An officer's request for consent to search does not taint an otherwise consensual encounter as long as the police do not convey a message that compliance with their request is required.

United States v. Pena, 143 F.3d 1363, 1367 (10th Cir. 1998) (internal citations omitted). There is no evidence of coercion or duress. There was no testimony that Rule threatened Morse, used a hostile tone of voice, touched Morse, tricked Morse, called for backup officers, or displayed his gun. See United States v. Hernandez, 93 F.3d 1493, 1499 (10th Cir. 1996) (finding consent voluntary and noting there was no evidence that officer used commanding or threatening manner or tone of voice, displayed a gun, or touched the defendant).

Morse argues that United States v. Gregory, 79 F.3d 973 (10th Cir. 1996), supports his contention that he did not consent to continued questioning. In Gregory, the driver was stopped because he crossed onto the emergency lane. We concluded

that the stop was illegal because high winds would have affected the driver's ability to maintain his vehicle within the driving lane. We then considered whether the driver had voluntarily consented to answer further police questions. We concluded that the consent was not voluntary because it was in close temporal proximity to the illegal stop. In analyzing the voluntariness of the consent, we did not apply the "totality of the circumstances" test, but rather the higher standard of requiring the government to show that "the primary taint of the illegal stop was purged." Id. at 979. Because the traffic stop in the present case was not illegal, we apply a different standard than that used in Gregory, and Gregory is inapposite.[2]

Morse argues that Rule testified he would not have permitted Morse to leave if Morse had not consented to the questioning and search. However, Rule's subjective intent is irrelevant as long as it was not communicated to Morse. The issue is whether a reasonable person in Morse's position would have felt free to leave. Rule's unexpressed intention to keep Morse there is not relevant to that issue.

<u>Probable Cause to Arrest</u>

> Probable cause exists where the facts and circumstances within the officers' knowledge, and of which they have reasonably trustworthy information, are sufficient in themselves to warrant a man of reasonable

---

[2] Morse also argues that United States v. Lee, 73 F.3d 1034 (10th Cir. 1996), is analogous. In Lee we held that the driver did not voluntarily consent to the questioning or search of the vehicle because the police had not returned the driver's documents to him. Because Rule returned Morse's documents to him before the questioning, Lee is also inapposite.

> caution in the belief that an offense has been or is being committed. Although it is not necessary that the officer possess knowledge of facts sufficient to establish guilt, mere suspicion is insufficient to establish probable cause. We recognize that probable cause must be evaluated in light of circumstances as they would have appeared to a prudent, cautious, trained police officer.

United States v. Maher, 919 F.2d 1482, 1485 (10th Cir. 1990) (citations omitted).

In response to questioning, Morse told Rule he did not have anything illegal in the pickup, and did not have any guns, drugs, or large amounts of money.  Rule sought and received permission from Morse to search the toolbox and Rule discerned that the toolbox had a false compartment.  At that point, Rule arrested Morse.

We have previously held that the apparent existence of a hidden compartment likely to contain contraband is sufficient to create probable cause to arrest a defendant. See United States v. Soto, 988 F.2d 1548, 1558 (10th Cir. 1993).  Morse argues that most hidden compartment cases deal with reasonable suspicion and are, therefore, inapplicable.  However, in at least two cases, a hidden compartment created probable cause to arrest.  See Soto, 988 F.2d at 1558; United States v. Arango, 912 F.2d 441, 447 (10th Cir. 1990).

Morse argues that in cases where officers noted the potential for a hidden compartment, additional factors were also considered in determining whether there was probable cause to arrest.  He ignores the other factors that caused Rule to be suspicious of Morse:  Morse's nervousness, Morse's travel plans, the odor of fresh paint, the

-10-

recent purchase of the pickup, and insurance on the pickup by a third party. Those factors in combination with the hidden compartment created probable cause to arrest. Similarly, in Soto, after noting "what the officer observed in his search of the trunk and passenger compartment at the scene of the stop," we affirmed the district court's probable cause determination, which was based solely upon the presence of a false compartment likely to contain contraband. 988 F.2d at 1558.

Morse argues there are potentially innocent explanations for having a false bottom in a toolbox. However, the standard "is not whether the compartment could be used for legitimate purposes." Utah v. Poole, 871 P.2d 531, 535 (Utah 1994). "[T]he mere possibility of innocent explanations would not suffice to diminish the reasonable likelihood of illegality appearing, from the circumstances, to prudent men possessing the knowledge and experience of the officers." Id. (internal citation omitted)).

Even if we determined that Rule did not have probable cause to arrest Morse, we would affirm based on the inevitable discovery doctrine. "Under the inevitable discovery exception, unlawfully seized evidence is admissible if there is no doubt that the police would have lawfully discovered the evidence later." United States v. Romero, 692 F.2d 699, 704 (10th Cir. 1982). At the time that Morse was arrested, he had already consented to the search of the toolbox. Within minutes of Morse's arrest, a drug-sniffing canine alerted to the toolbox. See United States v. Bell, 892 F.2d 959, 968 (10th Cir. 1989) (finding canine alerting creates probable cause to arrest). Thus,

even if Morse's arrest was premature, the discovery of evidence creating probable cause to arrest was inevitable. <u>See</u> <u>Romero</u>, 692 F.2d at 704 (noting the inevitable discovery exception is particularly justified where "the evidence clearly would have been discovered within a short time through a lawful investigation already underway"). The inevitability of the discovery of evidence creating probable cause to arrest Morse renders Morse's arrest valid.

AFFIRMED.

Entered for the Court

Mary Beck Briscoe
Circuit Judge